**In the Matter of Robert J. WEISBARD,**
**Attorney–Respondent.**

No. 00SA283.

Supreme Court of Colorado,
En Banc.

May 29, 2001.

John S. Gleason, Attorney Regulation Counsel, James Sudler, Assistant Regulation Counsel, Denver, CO, Attorneys for Complainant.

Law Office of George Meyer, George S. Meyer, Denver, CO, Attorney for Attorney–Respondent.

PER CURIAM

The issue that this attorney regulation case presents is whether the presiding disciplinary judge (PDJ) applied the correct standard in deciding whether to vacate a default entered against an attorney-respondent. When the respondent, Robert J. Weisbard, did not answer the complaint filed against him, the PDJ entered a default on September 22, 1999. The allegations of the complaint were therefore deemed admitted. *See* C.R.C.P. 251.15(b).

Weisbard appeared pro se at his sanctions hearing on January 18, 2000, and presented argument and evidence regarding the form of discipline to be imposed. *See id.* He did not ask for the default to be set aside. More than a month later, but before the hearing board had issued its opinion and order, Weisbard hired legal counsel, who filed a motion to set the default aside, based on excusable neglect. On May 22, 2000, the PDJ held a hearing on the motion to set aside the default. At the conclusion of the hearing, the

PDJ found that the evidence Weisbard presented, primarily as to his mental state at the time he defaulted, was insufficient to show excusable neglect. Accordingly, in a written opinion and order imposing sanctions, the PDJ and hearing board suspended Weisbard for eighteen months and ordered him to pay the costs of the proceeding. Weisbard appeals from the hearing board's order, but only that part that denied his motion to set the default aside. He does not argue that the sanction should be reversed if the default stands. We affirm the board's order.

### I. Facts

Robert J. Weisbard was licensed to practice law in Colorado in 1988. Based on the default and the evidence presented at the sanctions hearing, the board made the following factual findings. Weisbard and Fara Schneider Mawhinney formed an LLC in 1995. They entered into an oral agreement in 1997 that all proceeds from matters accepted thereafter on an hourly basis would be shared between them. A dispute arose in June 1998 over a $20,000 contingent fee that Mawhinney received. After paying the LLC's paralegal $3,500, Mawhinney deposited the balance in an account separate from the LLC's account. She believed that the settlement proceeds did not fall within the oral agreement between Weisbard and herself because she accepted the case before the agreement was made and because it was a contingent fee, not an hourly fee. After Weisbard discovered that the fee had not been placed in the firm's account, he changed the locks on the office while Mawhinney was on vacation. He took control of the LLC's operating and trust accounts (about $20,000) and deposited the funds into a different trust account, with only his name on it. He did not tell Mawhinney the whereabouts of the new account. The breakup of the firm had an adverse impact on a number of clients.

The only issue in this appeal is whether the PDJ should have set the default aside. Weisbard does not contest the findings or the sanction imposed, so a brief recitation of the board's conclusions is appropriate.

The hearing board found that in seven separate client matters Weisbard violated Colo. RPC 1.15(b) (failing to render an accounting and return unearned client funds); he violated RPC 1.4(a) (failing to communicate with a client) in two matters; he violated RPC 1.3 (neglecting a legal matter) in one matter; Weisbard threatened to take criminal and disciplinary actions against Mawhinney in a civil matter, contrary to RPC 4.5(a); he commingled client and personal funds in violation of RPC 1.15(a); he violated RPC 8.4(c) (engaging in dishonest conduct) in one matter; and he violated C.R.C.P. 251.10(a) by failing to respond to some of the requests for investigation. The hearing board imposed an eighteen-month suspension on Weisbard, who had not previously been subject to disciplinary sanctions. The key to this appeal is the PDJ's refusal to set the default aside.

## II. Analysis

■ C.R.C.P. 251.15(b) provides that "a respondent who fails to file a timely answer may, upon a showing that the failure to answer was the result of mistake, inadvertence, surprise, or excusable neglect, obtain leave of the Presiding Disciplinary Judge to file an answer." Excusable neglect is the only ground that applies in this case. Subject to also considering the attorney's mental and emotional state if raised to excuse a default, as we explain below, the PDJ was correct when he analogized a motion under 251.15(b) to a motion under C.R.C.P. 60(b)(1) ("On motion and upon such terms as are just ... the court may relieve a party ... from a final judgment, order, or proceeding for ... (1) [m]istake, inadvertence, surprise, or excusable neglect ....").[1]

■ The decision to grant relief under C.R.C.P. 60(b)(1) is entrusted to the sound discretion of the trial court and will not be disturbed on appeal unless there is an abuse of discretion. *First Nat'l Bank of Telluride*

*v. Fleisher*, 2 P.3d 706, 713 (Colo.2000). The starting point in considering a motion to set aside the default is the standard typically applied in considering relief under 251.15(b).

> In a motion to set aside a default judgment or entry of default, the movant bears the burden of proving the grounds for relief by clear, strong, and satisfactory proof. In setting aside a default judgment on the basis of excusable neglect, the trial court must determine: (1) whether the neglect causing the default was excusable; (2) whether the movant has alleged a meritorious defense; and (3) whether relief from the order would be equitable.

*Sumler v. Dist. Court*, 889 P.2d 50, 55–56 (Colo.1995) (citations omitted). Only the first requirement is at issue here; the complainant conceded that Weisbard could allege a meritorious defense, and the PDJ did not resolve the third question once he had determined that Weisbard did not satisfy the excusable neglect part.

■ "A party's conduct constitutes excusable neglect when the surrounding circumstances would cause a reasonably careful person similarly to neglect a duty. Common carelessness and negligence do not amount to excusable neglect." *Tyler v. Adams County Dep't of Soc. Servs.*, 697 P.2d 29, 32 (Colo. 1985) (citations omitted). Citing *Colorado Department of Public Health & Environment v. Caulk*, 969 P.2d 804, 809 (Colo.App. 1998), the PDJ stated, "[E]xcusable neglect involves unforeseen circumstances which would cause a reasonably prudent person to overlook a required act in the performance of some responsibility.... Failure to act because of carelessness and negligence is not excusable neglect." He summarized Weisbard's evidence as follows:

> Weisbard argued that his temporary inability to cope with the disciplinary process constituted excusable neglect. He alleged that in August or September 1998, he be-

1. A default such as the one entered in this case establishes only the truth of the allegations in the complaint. It does not establish the form of discipline, and thus is not a final appealable order. In this sense, it resembles default under C.R.C.P. 55(a) more than a default judgment under C.R.C.P. 55(b). C.R.C.P. 55(c) provides that a court may set aside the entry of a default for "good cause shown," but that a judgment may be set aside in accordance with the standards of C.R.C.P. 60(b). However, we have held that the same standards apply to motions under both Rule 55(c) and Rule 60(b)(1) (excusable neglect). *Sumler v. Dist. Court*, 889 P.2d 50, 57 (Colo.1995).

gan suffering personal and emotional problems, including significant marital problems. Weisbard's marital therapist identified symptoms of depression which, in Weisbard's view, contributed to his progression into disregard of his responsibilities in the disciplinary process. Weisbard found that he was unable to cope with his disciplinary difficulties, and hoped that the problems would disappear.

In addition to the marital therapist, Weisbard presented the expert psychiatric testimony of Frederick M. Miller, M.D. Dr. Miller (who was not Weisbard's treating psychiatrist) testified that Weisbard was suffering from a depressive disorder, although not a major one, and that his mental and emotional state impaired his ability to respond in the grievance process. When the PDJ asked whether the degree of Weisbard's depression prevented him from responding to the complaint, Dr. Miller conceded that no one could give a reliable opinion on that issue. Dr. Miller also testified that although Weisbard was aware of his need to respond and the possible consequences of not responding, "I'm not sure that he had the capacity to use that knowledge rationally at that moment, and that constitutes a certain degree of incompetency."

The PDJ concluded that Weisbard's evidence did not establish excusable neglect. The PDJ noted that Weisbard received and signed for the complaint, that he appeared and participated fully at the sanctions hearing but did not then ask for the default to be set aside, and that his emotional and mental problems did not prevent him from otherwise practicing law during the time that he should have answered the complaint.

■ On appeal, Weisbard concedes that the usual appellate standard of review would be whether the PDJ abused his discretion in not setting the default aside, but he argues that the PDJ applied the wrong *legal* standard in this case, which is subject to de novo review. According to Weisbard, the PDJ utilized only a "reasonably prudent person" standard in ruling on the motion and precluded ever taking into account the attorney's mental or emotional impairment at the time

of the default. But the record and the PDJ's findings and conclusions demonstrate that he did take into account the attorney's mental and emotional state at the time of the default.

■ Weisbard's evidence failed to establish that at the time he defaulted he was under an impairment significant enough to excuse his failure to answer the complaint. At the hearing to set the default aside, the PDJ stated:

[T]he evidence presented really isn't contested that Mr. Weisbard suffered from depression . . . during the period of time when he was required . . . to respond to the complaints.

It is particularly noteworthy that Mr. Weisbard during that period of time was, in fact, able to respond to some of the [requests] for information for investigation . . . but with regard to some of them, he did not. And the question that the Court tried to address with Dr. Miller and my question posed to him is whether or not the depression prevented Mr. Weisbard from responding.

I think everyone in the courtroom got the same conclusion that I did, that [Dr.] Miller was either unable or unwilling to answer that question. But it is clear that Mr. Weisbard was able to respond, because he did so during the relevant period of time.

It is equally clear that at some point in time Mr. Weisbard chose not to respond to the remaining requests for investigation[ ]. He chose not to respond to the complaint. There may be—may have been an impact on his judgment, mental ability, by the depression, but the evidence presented is insufficient even by a preponderance of the evidence to indicate to this Court that it was the controlling factor *or even a significant factor* in Mr. Weisbard's failure to respond to the various complaints and participate in the proceeding.

(Emphasis added.) The evidence supports the PDJ's determination that Weisbard's emotional and mental problems did not differ qualitatively from the problems any other lawyer would experience when called to an-

swer a complaint involving misconduct. The PDJ's findings of fact are not clearly erroneous and we will not overturn them. *See* C.R.C.P. 251.27(b).

An attorney has a duty to cooperate with disciplinary proceedings, C.R.C.P. 251.5(d); because of this, defaults are not subject to being set aside easily. Nonetheless, we recognize that an attorney's mental and emotional state may, in some instances, be a significant contributing cause for the default. When the attorney demonstrates that the default was due significantly to the attorney's mental or emotional state at the time of the default, the default should be set aside and the disciplinary proceedings resumed. The PDJ's findings and the record demonstrate that the PDJ employed the correct standard after finding that the evidence in support of setting aside the default failed to demonstrate that the mental and emotional state of the attorney was a significant factor in causing the default.[2]

An appellate court will find such an abuse of discretion only where "there is a showing that the findings and conclusions of the trial court are so manifestly against the weight of evidence as to compel a contrary result." *In re Water Rights of Hines Highlands Ltd. P'ship*, 929 P.2d 718, 728 (Colo. 1996). Accordingly, we affirm the PDJ's order refusing to set the default aside.

### III. Conclusion

The PDJ's and hearing board's opinion and order imposing sanctions is affirmed. The order imposing sanctions shall become effective thirty days after this opinion is announced.

---

**2.** The PDJ granted Weisbard's motion to stay imposition of sanctions pending our disposition of this appeal. Thus, Weisbard has continued to practice. We observe that Weisbard's claim for excusable neglect was that he was suffering from a severe mental or emotional impairment that effectively precluded him from representing himself. The PDJ found otherwise. Such an impairment would be equivalent to that required for disability inactive status, pursuant to Rule 251.23.