**The PEOPLE of the State of Colorado, Complainant**

v.

**Steven J. MASCARENAS, Respondent.**

**No. 02PDJ044.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 31, 2003.

Opinion by a Hearing Board consisting of the Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board Members BRUCE W. SATTLER and FREDERICK Y. YU, both members of the bar. The prior opinion dated October 30, 2003 is withdrawn and the following opinion is substituted.

## MODIFIED OPINION AND ORDER IMPOSING SANCTIONS AND RULING ON COMPLAINANT'S MOTION FOR POST–TRIAL RELIEF

*SANCTION IMPOSED: NINETY DAY SUSPENSION; RESTITUTION; UPON REINSTATEMENT A ONE YEAR PERIOD OF PROBATION WITH CONDITIONS*

A trial in this matter was held on March 24, 25 and 26, 2003, before a Hearing Board consisting of the Presiding Disciplinary Judge Roger L. Keithley and two Hearing Board Members, Bruce W. Sattler and Frederick Y. Yu, both members of the bar. James S. Sudler, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). Gary D. Fielder represented respondent Steven J. Mascarenas ("Mascarenas"), who was also present.

At the trial, the People's exhibits 1 through 16 and Mascarenas's exhibit A were admitted into evidence. Aletha Fox–Schaps, William Spezialetti, Jr., Christy Spezialetti,

Michelle Thompson, Patricia Spezialetti, William Spezialetti, Sr., and Steven Mascarenas testified on behalf of the People, and Mascarenas testified on his own behalf. The Hearing Board considered the testimony of the witnesses and the exhibits admitted into evidence, the argument of the parties, and made the following findings of fact which were established by clear and convincing evidence.

After trial and the issuance of the Panel's initial Order in this matter, the Complainant timely moved under C.R.C.P 59 for post trial relief as to the initial Order. The Complainant sought restitution from the Respondent, and also further relief clarifying the initial Order. Except as specifically set forth in this Amended Order, the Complainant's motion for post-trial relief is denied.

## I. FINDINGS OF FACT

Steven J. Mascarenas has taken and subscribed the oath of admission, was admitted to the bar of the Supreme Court on May 21, 1986, and is registered upon the official records of the Court, attorney registration number 15612. He is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

### A. The Spezialetti Matter

In February 2000, Mascarenas was engaged by William Spezialetti, Jr. (the "client") to represent him in a child custody matter. The client sought Mascarenas's assistance in obtaining full custody of his infant daughter. Patricia Spezialetti, the client's mother, together with the client, signed a fee agreement agreeing to pay Mascarenas $165 per hour and—for matters demanding immediate attention—$225 per hour for Mascarenas's legal services. The fee agreement contained the following language:

> Client agrees to pay any attorney's fees, court costs and expenses Attorney incurs in attempting to collect any delinquent fees or costs set forth under this agreement, including, but not limited to, post-judgment fees, costs and expenses. Interest on any unpaid balance will be charged at 2% per month, compounded monthly. INTEREST WILL BEGIN BEING

CHARGED TO CLIENT IMMEDIATE-LY UPON THE CONCLUSION OF THE CLIENT'S CASE, *AND NOT AT THE TIME OF BILLING*. THE "CONCLU-SION OF CLIENT'S CASE" SHALL IN-CLUDE, BUT NOT LIMITED (sic) TO, THE LAST COURT APPEARANCE OR THE LAST DOCUMENT FILED OR PREPARED BY ATTORNEY, ETC. (emphasis in original).

PLEASE BE ADVISED THAT THE COURT MUST ALLOW AN ATTORNEY TO OFFICIALLY WITHDRAW FROM A CASE, ONCE FILED. (emphasis in original).

If applicable, this fee agreement will be fully secured by the signing of a Promissory Note and/or Deed of Trust. These documents are hereby incorporated by reference. Further, Client hereby grants an attorney's lien against any and all property, monetary funds and/or settlement funds in Attorney's possession and/or which are part of another case being handled by Attorney, as security for all debts incurred as part of this fee agreement.

The fee agreement enumerated specific amounts for tasks performed by Mascarenas. It requested a retainer for fees in the amount of $1,295, and costs in the amount of $300. The client's mother paid Mascarenas $1,500 at the initial meeting.

The case progressed for over a year. Over that period of time, Mascarenas did not provide the client with any itemization or accounting of the time spent on the client's matter, or of the costs incurred on the client's behalf. A week and a half before a permanent orders hearing scheduled for March 22, 2001, Mascarenas told the client he needed an additional $2,000 prior to the hearing. The client requested a billing statement for work already performed justifying the funds already consumed. Mascarenas promised to provide one.

On March 20, Mascarenas asked the client to meet with him the following day and bring his mother to discuss the hearing and to sign some papers. The next day, March 21, Mascarenas met with the client and his mother and discussed what to expect at the hearing the following day. Mascarenas again re-

quested an additional $2,000. The client tendered to Mascarenas two cashier's checks each for $1,000. The client's mother asked Mascarenas for an itemization of his use of the funds they had paid to date. Mascarenas orally gave her a rough idea of the time he had put into the case, but provided nothing to her in writing.

Mascarenas requested that the client's mother sign a promissory note, a deed of trust on her house securing the note, and a guaranty to secure future attorney fees. The promissory note was made payable to Mascarenas's law firm in the amount of $5,000 plus any other sums due and owing, bore an interest rate of two percent per month, compounded monthly, and was due on May 21, 2001. It also provided "Promissor agrees to be responsible for any attorney's fees and all costs associated with the execution of this Promissory Note and the filing of any documents pertaining to the security interest in the above referenced real property, including, but not limited to, attorney's fees not necessarily mentioned in the Attorney/Client Fee Agreement." Mascarenas did not discuss the terms of the note—including the interest rate—with the client or his mother. The terms of the promissory note relating to interest are inconsistent with the provisions of the fee agreement.

The client's mother told Mascarenas that she did not want to sign the documents immediately because she did not know if the deed to her home was still in her name. She explained that she was preparing to move to another state and had been working with a relocation company on the sale of the home. Mascarenas told her that it was "legal" and "ok" to sign and said "I'm a reasonable man." The client's mother asked Mascarenas if she could discuss the matter with her husband that evening, and Mascarenas said that there was not enough time and that the documents needed to be signed before the hearing the next day. Mascarenas became agitated. The client's mother left the room and attempted to reach her husband by cell phone but was unable to reach him. She then signed the documents, believing Mascarenas would not represent her son the next day at the hearing if she failed to do so, although

Mascarenas had never said he would not. Mascarenas did not allow the client's mother time to get independent advice about the terms of the documents. He did not tell the client's mother to seek advice of counsel before signing the documents. Mascarenas was aware that the client's mother was not his client.

Mascarenas did not give the client or his mother a copy of the documents. She was unaware that Mascarenas had recorded the documents thereby creating a lien on her home until a realtor told her about the lien three months later.

Mascarenas appeared at the March 22 hearing with the client and it was continued. Thereafter, the client again requested an accounting on at least two occasions by telephone and by letters dated April 18, 2001 and June 13, 2001. Mascarenas did not provide an accounting.

The client terminated Mascarenas's representation and hired replacement counsel in June 2001. On August 12, 2001, in response to a letter sent by replacement counsel, Mascarenas prepared an accounting. The accounting covered the entire period of representation of approximately fifteen months in the amount of $12,928.60, reflecting payment of $4,700 with $8,228.60 as a balance due.

Near the end of the Mascarenas/Spezialetti attorney-client relationship, the client's mother tried to sell her home. On at least one occasion a sale was abandoned due to the existence of the Mascarenas lien on the property. The Spezialetti home was finally sold in the fall of 2001 for an amount less than that offered in the abandoned sale. Approximately $8,000 was collected by the title company from the sale proceeds and paid to Mascarenas pursuant to the lien.

### B.   The Fox–Schaps/Cline Matter

Mascarenas represented Shaun Thomas Cline regarding a charge of sexual assault. His mother, Aletha Fox–Schaps, the client and Mascarenas met on March 15, 2001. The client's mother and Cline signed a fee agreement.[1] The fee agreement stated, in part, "I will represent you in the following matter: Criminal Felony Matter in Boulder County Court re: Sexual Assault—First Level of Attorneys Fees." The fee agreement further stated:

All legal services for this type of matter are normally charged on an hourly rate of $250, EXCEPT Client has chosen to utilize a lump sum fee arrangement at least for the preliminary part of this matter of $2,500, plus costs for a maximum of [see below] hours . . . which will provide Client with the following legal services only in the above referenced matter:

- Preliminary investigation of the circumstances of this matter.

- Review of all documents pertaining to this matter.

- Legal research of the relevant issues herein, if necessary.

- Negotiation with the opposing party or their relevant person.

- Office and telephone consultation with Client or other person.

- One court appearance only on 3–15–01 and discovery for first level of attorney's fees.

Mascarenas explained the various provisions of the fee agreement to his client and Fox–Schaps. At the initial meeting on March 15, the client and his mother paid Mascarenas $1,700 of the $2,500 lump sum requested by Mascarenas in the fee agreement. The client's mother told Mascarenas that she did not have additional funds to pay him and asked if she could make partial payments. Mascarenas inquired into what the client's mother could provide as collateral to guarantee the payment of his fees. The client's mother mentioned her home.

Mascarenas requested that the client's mother sign a "Guarantor/Co–Signor Agreement" guaranteeing the payment of "all attorneys fees and costs incurred *not* just the first level of fees and costs." (emphasis in original). This handwritten notation was initialed by the client's mother.

---

1.   Although both Cline and Fox–Schaps executed the fee agreement as responsible parties, other documents establish that only Cline was Mascarenas's client.

Mascarenas also requested that the client's mother sign a promissory note dated March 15, 2001 for $1,395 plus any other sums due and owing. The promissory note provided for interest at the rate of two percent per month, compounded monthly, payable no later than October 15, 2001. The promissory note provided that the client agreed to grant Mascarenas an attorney's lien and second deed of trust for security, and to be responsible for any attorney's fees and costs associated with the execution of the promissory note and filing of documents pertaining to the security interest. Mascarenas also requested that the client's mother sign a deed of trust on her home for the same amount set forth in the promissory note "plus any other sums due and owing."

The Cline preliminary hearing was set to occur on April 12, 2001. Mascarenas appeared and waived the hearing. Mascarenas requested additional funds to go forward. On May 11, 2001, at the scheduled arraignment, Mascarenas appeared with the client. The client informed the court that he wanted to seek other counsel based upon Mascarenas's request for more money. The court continued the arraignment to June 8, 2001.

On June 22, 2001, Mascarenas's motion to withdraw was granted. Mascarenas had represented the client for a period of approximately three months. Mascarenas prepared an accounting on September 8, 2001, and provided it to his client. The total amount charged by Mascarenas was $6,702.37, including approximately $280 in interest which had accrued from June 22 through September 8.

## II. CONCLUSIONS OF LAW

The Amended Complaint alleges in claim one that Mascarenas violated Colo. RPC 1.16(d)(upon termination of representation an attorney shall surrender property to which the client is entitled); in claim two, Colo. RPC 4.3 (in dealing on behalf of a client with a person who is not represented by counsel, an attorney shall not give advice to the unrepresented person other than to secure counsel); in claim three Colo. RPC 1.15(b)(an attorney shall, upon request, provide to a client a full accounting of property to which

that client is entitled); in claim four Colo. RPC 1.4(a)(an attorney shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information) and Colo. RPC 1.4(b) (an attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), and claim five Colo. RPC 8.4(c)(it is professional misconduct to engage in conduct involving dishonesty, deceit, fraud or misrepresentation). In the Fox–Schaps/Cline matter, the Amended Complaint alleges in claim six that Mascarenas violated Colo. RPC 1.5(a)(an attorney's fee shall be reasonable), and claim seven, Colo. RPC 1.15(b) (an attorney shall, upon request, provide to a client a full accounting of property to which that client is entitled).

### A. The Spezialetti Matter

The People contend in claim one that Mascarenas's conduct in connection with the client meeting immediately before the March 22 permanent orders hearing—in which Mascarenas asked for additional funds and security for the payment of his fees to proceed—constituted a violation of Colo. RPC 1.16(d). Colo. RPC 1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

The People characterize Mascarenas's conduct as a threat to withdraw unless the funds are paid, without adequate notice to the client. The evidence presented, however, did not establish any such threat. Although Mascarenas did ask for more money and insisted that security be provided for the payment of future fees, the evidence did not establish that Mascarenas ever threatened he would not appear at the hearing scheduled for the next day. His demand for additional funds and/or collateral for payment of his fees, although poorly timed, was within his right under his fee agreement. Accordingly,

the alleged violation of Colo. RPC 1.16(d) was not established by a clear and convincing standard and claim one is dismissed.

■ Claim two alleges a violation of Colo. RPC 4.3. Colo. RPC 4.3 provides:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall state that the lawyer is representing a client and shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. *The lawyer shall not give advice to the unrepresented person other than to secure counsel.* (emphasis added).

The Comment to the ABA Annotated Model R. Prof. Conduct 431–434, (5th ed.2003) with regard to Rule 4.3 provides in part:

The Rule distinguishes between situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client and those in which the person's interests are not in conflict with the client's. In the former situation, the possibility that the lawyer will compromise the unrepresented person's interests is so great that the Rule prohibits the giving of any advice, apart from the advice to obtain counsel. Whether a lawyer is giving impermissible advice may depend on the experience and sophistication of the unrepresented person, as well as the setting in which the behavior and comments occur. This Rule does not prohibit a lawyer from negotiating the terms of a transaction or settling a dispute with an unrepresented person.

At the time Mascarenas spoke to the client's mother, he represented her son. He was aware that she was not represented by counsel. The documents presented to the client's mother for her signature benefited the client to the potential detriment of his mother. Mascarenas's motive in requesting the mother to sign the promissory note and deed of trust was to ensure payment of his fee.

The testimony of the client's mother was credible that Mascarenas told her that the documents were "legal" and "ok." The utterance of these words constituted the rendering of legal advice.[2] The setting in which Mascarenas gave advice to the client's mother, a client conference, focused in part upon the payment of attorney's fees, the day before a permanent orders hearing was scheduled. Her lack of sophistication and experience gave her little choice but to accept the attorney's comments as legal advice without realistic questioning or consideration. Colo. RPC 4.3 is intended to preclude an attorney from compromising an unrepresented party's interests under such circumstances. Mascarenas violated Colo. RPC 4.3 by providing legal advice to the client's mother. *In re Pautler,* 47 P.3d 1175, 1182 (Colo.2002)(holding that deputy district attorney violated Colo. RPC 4.3 by speaking to a murder suspect by telephone who was not represented by counsel, and deceived him into believing that the attorney was a public defender); *In re Michelman,* 202 A.D.2d 87, 616 N.Y.S.2d 409, 411–412 (1994)(in handling adoption for client, lawyer's preparation and delivery of documents for completion by biological mother amounted to provision of advice to unrepresented person whose interests conflicted with client); *In re Myers,* 981 P.2d 143, 144 (Colo.1999)(attorney communicated directly with complaining witnesses in a theft case and professed not to represent the defendant).

■ Claim three alleges that Mascarenas violated Colo. RPC 1.15(b) by failing to timely provide an accounting. The client and the client's mother requested an accounting from Mascarenas several times during the course of the approximately fifteen-month period of representation. Mascarenas failed to promptly provide an accounting. Mascarenas had an obligation to inform the client of the amount owed upon request. His failing to provide an accounting when requested constituted a violation of Colo. RPC 1.15(b) as

---

**2.** "Advice" is defined as a "view; opinion; information ... an opinion expressed as to wisdom of future conduct." Black's Law Dictionary 50 (5th ed, West 1979). Mascarenas's statements cannot be characterized as negotiating the terms of a transaction or settling a dispute.

alleged in claim three. *See In re Weisbard*, 25 P.3d 24, 25 (Colo.2001)(violating Colo. RPC 1.15(b) in seven separate client matters by failing to provide an accounting when requested by his clients).

Under claim four, Mascarenas violated Colo. RPC 1.4(a) by failing to respond to requests from his client for an accounting of the work performed on the case and his use of the funds paid to him over a year's time, by failing to advise his client what he had done in the case, and by failing to explain his obligations in the event he moved to withdraw from the case the day before a scheduled hearing. Colo. RPC 1.4(a) requires an attorney to promptly comply with reasonable requests for information. The Commentary to Colo. RPC 1.4(a) specifically includes within its scope requests for information regarding fees and tasks accomplished.

The Amended Complaint also alleges in claim four that Mascarenas's failure to advise the client on a monthly basis what the lawyer was doing and the charges accruing for those tasks violated Colo. RPC 1.4(b). Colo. RPC 1.4(b) states: "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Colo. RPC 1.4(b) places a duty upon an attorney to explain a matter in such a fashion to permit the client to make informed decisions regarding the representation. Analysis of the Commentary to the Colorado Rules of Professional Conduct and the ABA Model Rules of Professional Conduct—from which the Colorado rules are derived—does not suggest that Colo. RPC 1.4(b) was intended to impose a periodic obligation upon attorneys to inform clients of billing status.[3] Indeed, the Commentary to the Model Rules of Professional Conduct proscribe the application of Colo. RPC 1.4(b) to matters dealing with the law and the benefits and risks of alternate courses of action. ABA Annotated Model R. Prof. Conduct p. 36–37 (4th ed.1999). Moreover, the Commentary to Colo. RPC 1.4 specifically refers to information pertaining to fees charged, costs, ex-

penses and disbursements as falling under the proscriptions of Colo. RPC 1.4(a), not Colo. RPC 1.4(b). The People have provided no authority in support of their contention that Colo. RPC 1.4(b) requires monthly billing statements. Colo. RPC 1.5, the rule regulating attorney's fees, is silent, both in its text and Commentary, as to any requirement for periodic billing. Accordingly, the alleged violation of Colo. RPC 1.4(b) is dismissed.

■ Claim five in the Amended Complaint alleges that the following provision contained in Mascarenas's fee agreement violated Colo. RPC 8.4(c).[4]

68. The respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by using language in his fee agreement that stated:

PLEASE BE ADVISED THAT THE COURT MUST ALLOW AN ATTORNEY TO OFFICIALLY WITHDRAW FROM A CASE, ONCE FILED.

Mascarenas intended, by the quoted provision, to inform his client that court approval was required before an attorney could withdraw from representation. Although the language in the fee agreement is poorly drafted and does not clearly state what Mascarenas attempted to communicate, it does not—standing alone—constitute a misrepresentation. The People contend that the quoted language was intended to mislead the client into believing that court approval of withdrawal was required and would always be granted. The proof, however, did not establish by clear and convincing evidence that Mascarenas intended such deceit. *See* C.R.C.P. 121 Section 1–1. The mental state required to find a violation of Colo. RPC 8.4(c) was not established. *People v. Rader*, 822 P.2d 950, 953 (Colo.1992)(holding that to find a violation of DR 1–102(A)(4) [the predecessor to Colo. RPC 8.4(c) ], "it must be shown that the lawyer possessed a culpable mental state greater than simple negligence") *citing The Florida Bar v. Burke*, 578

---

3. The fee agreement in this matter does not specify any periodic billing period.

4. Colo. RPC 8.4(c) provides that it is professional misconduct to engage in conduct involving dishonesty, deceit, fraud or misrepresentation.

So.2d 1099, 1102 (Fla.1991) (stating that intent is a major and necessary element in a finding of dishonesty, fraud, deceit, or misrepresentation). There being no intent to mislead on the part of Mascarenas, nor a knowing misstatement of fact set forth in the statement, claim five alleging a violation of Colo. RPC 8.4(c) is dismissed.

### B. The Fox–Shaps/Cline Matter

■ Claim six of the Amended Complaint alleges a violation of Colo. RPC 1.5. Colo. RPC 1.5(a) sets forth eight factors to be considered in determining the reasonableness of a fee.[5] The Amended Complaint alleges that Mascarenas improperly charged $330 for preparing a promissory note to secure his fee and $157.50 to release the deed of trust securing the promissory note. The People allege that the charging of such fees was unreasonable because the fees did not arise from legal services provided to the client. The promissory note specifically provided, however, that the fees associated with the execution of the promissory note and the filing of documents pertaining to the security interest in the real property were the responsibility of the debtor.[6] The operative documents make the debtor responsible for the cost of preparing the promissory note, the deed of trust and the necessary documentation to release these instruments. No evidence was presented that the amount charged for those services were not in accord with the fees customarily charged or are otherwise unreasonable. The charges are not unreasonable on their face. The fact that those fees were listed on the attorney fee statement, as opposed to a separate statement, does not make them unreasonable. Mascarenas's willingness to continue the representation without contemporaneous payment for those services provided a benefit to the client. Similarly, Mascarenas's preparation of the promissory note, the deed of trust and the release provided a benefit to the client—continued representation. See In re Sather, 3 P.3d 403, 410 (Colo.2000).

Claim six also alleges that charging $145 for a motion to withdraw and $145 for a simple motion to continue was unreasonable. The credible evidence from Mascarenas, however, established that he spent the requisite amount of time on those tasks at his agreed-upon hourly rate to justify the fee charged.[7] Accordingly, no violation of Colo. RPC 1.5(a) was proven regarding the fees charged for the motion to withdraw or the motion to continue.

Claim six alleges that Mascarenas charged a $30 office minimum fee not based upon any work done for the client in violation of Colo. RPC 1.5(a). The only evidence supporting this charge is that the fee appears on Mascarenas's bill. Mascarenas's fee agreement, however, specifically provided that a $30 minimum charge for office expenses would be charged to the client, and Mascarenas explained to his client that the charge covered routine but not extraordinary postage, copy costs and similar expenses. The People supplied no authority for the proposition that minimum office expense charges cannot be charged to clients and we have found none. A $30 charge for unspecified routine office expenses associated with the establishment of an attorney/client relationship, on its face,

---

5. Colo. RPC 1.5(a) provides:
  A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  (3) the fee customarily charged in the locality for similar legal services;
  (4) the amount involved and the results obtained;
  (5) the time limitations imposed by the client or by the circumstances;
  (6) the nature and length of the professional relationship with the client;
  (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  (8) whether the fee is fixed or contingent.

6. The debtor on the note, the client's mother, was also obligated for the payment of legal fees under the fee agreement.

7. See, e.g., People v. Nutt, 696 P.2d 242, 248 (Colo.1984)(In a civil case for the recovery of fees, the burden is on the attorney to prove that the services performed were reasonably worth the amount stated in the agreement); Bryant v. Hand, 158 Colo. 56, 404 P.2d 521, 523 (1965).

is not unreasonable—especially where it is fully disclosed in the fee agreement, explained to and accepted by the client.

Claim six also alleges that Mascarenas charged an unreasonable fee in violation of Colo. RPC 1.5(a) by charging his full hourly rate of $250 per hour for secretarial and word processing services. Charging an attorney's hourly rate for purely clerical services that are generally performed by a non-lawyer is unreasonable. *In re Green*, 11 P.3d 1078, 1088 (Colo.2000)(charging an attorney's hourly rate for clerical services that are generally performed by a non-lawyer, and thus for which an attorney's professional skill and knowledge add no value to the service, is unreasonable as a matter of law). However, the evidence in this case established that Mascarenas prepared pleadings, letters and other documents by typing them rather than dictating or writing them by hand and formulated the content of those pleadings and documents as they were typed. Consequently, the time charged by Mascarenas for the preparation of pleadings in this manner includes the expenditure of time involving the exercise of professional judgment, skill and knowledge. *Green, supra.* Absent evidence that the period of time expended by Mascarenas in formulating the pleadings and documents exceeded that which would have been expended had he prepared the pleadings and documents utilizing more traditional (historical) methods, the proof is not clear and convincing that Mascarenas charged an unreasonable fee by virtue of the manner in which he prepared pleadings and documents and the charged violation is dismissed.

Finally, claim six alleges that Mascarenas charged the client 2% interest per month on the outstanding fee indebtedness for several months during which no accounting or bill had been provided to his client.[8] Mascarenas did not provide a bill or accounting until September 8, 2003, some seven months after the attorney/client relationship commenced. The delay in preparing and sending the bill

was solely the responsibility of Mascarenas. Notwithstanding that delay, Mascarenas charged 2%, compounded monthly, for portions of the months of June, July, August and September for services completed on or before June 22. It seems fundamental that under an attorney fee agreement, a client cannot pay the amount due until the attorney informs the client of the amount that is owed. Not informing the client of the amount due for three or more months, thereby effectively precluding payment, and then charging 2% interest, compounded monthly on that amount, is not reasonable—whether authorized by the fee agreement or not. By charging the 2% interest on the unpaid amounts due during the period Mascarenas failed to inform the clients of the amount owed, Mascarenas violated Colo. RPC 1.5(a).

Claim seven in the Amended Complaint alleges a violation of Colo. RPC 1.15(b)(a lawyer shall render a full accounting upon request by the client). The attorney-client relationship commenced in March 2001 and ended on June 22, 2001. The evidence on whether Mascarenas was asked to provide an accounting prior to September 8, 2001, was in dispute. The client's mother testified that a request was made and Mascarenas testified no request was made. The client's mother's testimony was not credible on this issue. The proof, therefore, does not establish by clear and convincing evidence that a request was made prior to September 8, 2001, when an accounting was requested. Mascarenas, upon receipt of that request, promptly prepared and provided an accounting. Accordingly, no violation of Colo. RPC 1.15(b) was proven and that charge is dismissed.

### III.  IMPOSITION OF SANCTION

■ A. In the Spezialetti matter, Mascarenas gave legal advice to an unrepresented person in violation of Colo. RPC 4.3, failed to promptly provide an accounting when requested in violation of Colo. RPC 1.15(b), and failed to communicate with the client in violation of Colo. RPC 1.4(a).[9] In the Fox-

---

8. The provisions of the fee agreement authorize charging such interest from the conclusion of the case and not the time of billing.

9. The violations of Colo. RPC 1.15(b) and 1.4(a) arise from the same act—failure to promptly provide an accounting of the use of the client's funds.

Schaps/Cline matter, Mascarenas charged an unreasonable fee.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. *In re Roose*, 69 P.3d 43, 47–48 (Colo.2003). Each element of the ABA *Standard* must be established to impose the sanction specified by a clear and convincing standard. *Id.*

The People recommended that suspension under ABA *Standard* 6.32 be imposed. ABA *Standard* 6.32 provides in part:

> Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding."

Mascarenas engaged in communication with the client's mother in the Spezialetti matter, knew that she was not his client, and knew that that she was not represented by counsel. Although it was established that the lien filed on the Spezialetti home caused the loss of a sale of the home which would constitute injury, under *Standard* 6.32, the injury must be suffered by a "party" to the proceeding, "or cause interference or potential interference with the outcome of the proceeding." The client's mother was not a party to the proceeding, and no evidence was presented that Mascarenas's actions caused interference or potential interference with the outcome of the proceeding. Accordingly, ABA *Standard* 6.32 does not apply to Mascarenas's misconduct.

The People also recommended suspension under ABA *Standard* 7.2, which provides:

> Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.

In the Spezialetti matter, Mascarenas knowingly failed to properly communicate information regarding requests for an accounting of attorneys' fees, costs, and the amount of retainer used. In the Fox–Schaps/Cline matter, by charging interest, compounded monthly, on a bill which he did not present to the client for payment over a seven month period, knowing he had not done so and knowing the client was unaware of either the amount owed or the amount of interest accruing, Mascarenas caused injury or potential injury to the legal system as a whole, by causing clients and the public to distrust and lose respect the legal profession. *See People v. Sather*, 936 P.2d 576, 579 (Colo.1997)(attorney suspended for thirty days for failing to communicate with clients and charging an unreasonable fee, where attorney had prior disciplinary history); *People v. Kardokus*, 881 P.2d 1202, 1204 (Colo.1994)(lawyer suspended for thirty days for charging a clearly excessive fee for a dissolution of marriage and neglecting to perform the necessary work).

Aggravating and mitigating factors must be considered in arriving at the appropriate sanction. ABA *Standards* 9.22 and 9.32. In mitigation, Mascarenas has had no prior disciplinary history, *see* ABA *Standard*, 9.32(a). In aggravation, Mascarenas's conduct with respect to both the Spezialetti and Fox–Schaps/Cline matters reveal a selfish motive: in the Spezialetti matter, Mascarenas placed his own financial interests over the interests of his client by refusing to provide a bill to them until considerable interest had accrued. In the Fox–Schaps/Cline matter, Mascarenas charged an unreasonable fee by charging interest on the outstanding amount due without presenting the bill to the client. Mascarenas refused to acknowledge the wrongful nature of conduct in either of the Fox–Schaps/Cline or the Spezialetti matter, *see* 9.22(g).

The Hearing Board concludes that a ninety-day period of suspension is warranted. A period of suspension is consistent with Colorado law. *See Pautler*, 47 P.3d at 1184 (suspending attorney for three months, staying the full period upon successful completion of a one year period of probation for, *inter alia*, a violation of Colo. RPC 4.3); *Myers*, 981 P.2d at 145 (suspending attorney for three months for *inter alia a* violation of Colo.

RPC 4.3, considering certain aggravating factors); *Weisbard,* 25 P.3d at 25 (attorney suspended for eighteen months for, *inter alia,* violating Colo. RPC 1.15(b) in seven separate client matters). *See also Sather,* 936 P.2d at 579; *Kardokus,* 881 P.2d at 1204. The Hearing Board further concludes that Mascarenas does not pose a threat of additional harm to the public and that he is eligible for probation following the suspension period. C.R.C.P. 251.7. Mascarenas's lack of remorse or understanding that his actions violated the Rules of Professional Conduct warrants the imposition of conditions on the period of probation. Consequently, following the period of suspension and Mascarenas's reinstatement, he is placed on probation for a period of one year. Mascarenas shall submit all fee agreements and billings to a practice monitor on a monthly basis, who shall review them to ensure that they comport with the Rules of Professional Conduct. The identity of the practice monitor shall be approved by the Office of Attorney Regulation Counsel. The practice monitor shall be an attorney licensed to practice law in the State of Colorado for at least five years. The monitor shall submit monthly reports to the Office of Attorney Regulation Counsel with regard to Mascarenas's billing practices and fee agreements. Mascarenas shall pay all costs associated with the practice monitor. Prior to the expiration of the probationary period, Mascarenas shall attend Continuing Legal Education seminars representing seven (7) additional hours of CLE credit in ethics. The required ethics CLE attendance is in addition to that required by C.R.C.P. 260.2. Mascarenas shall not engage in any conduct which violates the Colorado Rules of Professional Conduct during the period of probation.

■ B. Complainant's Motion for Post Trial Relief pursuant to C.R.C.P. 59 asks the Hearing Board to enter an order of restitution to the Spezialettis. As an additional sanction under C.R.C.P. 251.19(b), we order that the Respondent make restitution to Mr. and Mrs. William Spezialetti in the amount of $8,228.60, the payoff amount collected by the title company from the sale proceeds of the Spezialettis' house and paid to the Respondent in 2001 to discharge the note and deed

of trust which he had had Mrs. Spezialetti execute (See Complainant's Exhibit 4).

The Hearing Board has found that Respondent violated Colo. R.P.C. 4.3 by providing legal advice to Mrs. Patricia Spezialetti, the mother of his client, William Spezialetti, Jr. The advice given by the Respondent occurred at a meeting in his office. The Respondent had set the meeting for March 21, 2001, the day before his client's permanent orders hearing, and had asked his client specifically to have his mother attend. At the meeting, the Respondent requested $2,000 and was given two cashier's checks that day, each for $1,000. The Respondent then asked Mrs. Spezialetti to sign a promissory note and a deed of trust on her house securing the note as well as a guaranty to secure his future attorneys fees. Despite the Spezialettis' request for a billing statement for work already done, and his promise to provide one, the Respondent gave only an oral recapitulation of his efforts, and provided nothing in writing to his client or to the client's mother.

Mrs. Spezialetti said that she did not want to sign the documents immediately because she did not know if the deed to her home was still in her name and that she wanted to discuss the matter with her husband that evening. The Respondent not only told her that it was "legal" and "okay" to sign, but that there was not enough time and that the documents needed to be signed before the hearing the next day. There was no evidence of any urgency to the execution of the note and deed of trust. Mrs. Spezialetti tried to call her husband while in Respondent's office, but did not reach him. She then signed the note and deed of trust, believing that Mr. Mascarenas would not represent her son the next day at the hearing if she failed to do so.

Respondent did not give the client or his mother a copy of the note and deed of trust which she had executed. Nor did he advise his client or his mother that he had recorded the documents, creating a lien on her home.

In addition to the Respondent's violation of R.P.C. 4.3, these facts indicate that Mrs. Spezialetti executed the documents under coercion. The result of this coercion was

that Mrs. Spezialetti signed the promissory note in the amount of $5,000 "plus any other sums due and owing" and a deed of trust to their house.

The Hearing Board has found that the Respondent has violated Colo. R.P.C. 1.4(a) by failing to respond to his client's reasonable requests for information, including an accounting of work performed and his use of funds. As a consequence of this misconduct by the Respondent, the Spezialettis discovered the existence of Respondent's lien on their house from their real estate broker, and did not find out the full amount that Respondent was claiming he was owed until they sold their house in the fall of 2001.

Because the note and deed of trust were procured through a violation of R.P.C. 4.3 under coercive circumstances, and the Spezialettis were kept ignorant of the progress of the case or the amount of Respondent's fees because of his violation of RPC 1.4(a), it is appropriate to redress this misconduct by ordering the Respondent to restore to the Spezialettis, the victims of this misconduct, the proceeds which he received through the use of the note and deed of trust. This amount was $8,228.60.

When imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *ABA Standards for Imposing Lawyer Sanctions, § 3.0* Here, the Respondent's misconduct enabled him to secure his personal financial interest to a degree greater than that provided in his original fee agreement.

An order of restitution of the proceeds of Respondent's misconduct is not a finding as to the amount of time or the value of the work performed by the Respondent, or as to the reasonableness or unreasonableness of the Respondent's fee under R.P.C. 1.5. No claim challenging the reasonableness of the fee under R.P.C. 1.5 was raised by the Complainant and the record is insufficient to conclude that Respondent's fee was either reasonable or unreasonable.

*Dissent by the PDJ from Paragraph B of Section III.*

The Presiding Disciplinary Judge respectfully dissents from the Hearing Board's decision in Section III.B to order restitution in the Spezialetti matter.

No evidence was introduced in this proceeding suggesting either that Mascarenas did not do the work for which he billed or that the work performed in some way required the client to engage the services of another to complete or correct. Prior Colorado cases ordering restitution uniformly involve either conduct involving the taking of client property without authorization, failing to promptly return client property or engaging in some act or failure to act which resulted in the client expending additional funds which would not have been required if the attorney had satisfied their professional obligations.

In this case, Mascarenas' fee agreement specifically authorized him to require that his fee be secured. His misconduct arose out of his advice to a signatory to the fee agreement that the proposed deed of trust was "legal" and "ok". Neither the giving of that advice nor the circumstances under which the deed of trust was signed provides the legal premise for his entitlement to the deed of trust. His fee agreement provided the basis for that entitlement.

Ordering Mascarenas to return the moneys received from the sale of the Spezialetti house serves only as punishment for the Colo. RPC 4.3 violation. Punishment is not a relevant basis for imposing discipline. Moreover, the restitution order invites additional litigation over the fee. Absent some evidence that Mascarenas' charges for the services rendered to the Spezialetti's were either unjustified, unauthorized or that his conduct required the Spezialetti's to expend other sums to complete or correct his misconduct, I cannot agree with the order of restitution.

## IV. ORDER

It is therefore ORDERED:

1. STEVEN J. MASCARENAS, attorney registration number 15612 is suspended from the practice of law for a period of ninety days. Upon reinstatement to the practice of law, Mascarenas is placed upon a one year period of probation subject to conditions set forth in this decision.

2. Pursuant to C.R.C.P. 251.32, Mascarenas shall pay the costs in conjunction with this matter. Complainant shall file a Statement of Costs within fifteen (15) days of the date of this Order; Mascarenas shall have ten (10) days thereafter to file a Response.

3. Mascarenas shall pay to Mr. and Mrs. William Spezialetti the amount of $8,228.60 as restitution within thirty (30) days of the date of this Order.

4. Mascarenas shall reimburse Ms. Fox–Schapps for the interest charged on her matter in the amount of $277.57 within thirty (30) days of the date of this Order.