The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY

March 8, 2018

2018COA29

**No. 16CA1369 Taylor v. Long — Civil Procedure — Relief From
Judgment or Order — Excusable Neglect**

In this civil action, a division of the court of appeals addresses
the proper test to be applied when a plaintiff moves under C.R.C.P.
60(b) to set aside an order dismissing the complaint for failure to
obtain timely service.

Plaintiff filed a medical malpractice action but failed to serve
the defendants within the deadline set forth in C.R.C.P. 4(m).  The
district court dismissed the action without prejudice.  Because the
statute of limitations had run, plaintiff could not refile the lawsuit.
She moved to set aside the judgment under C.R.C.P. 60(b) based on
excusable neglect.  The district court considered only whether
plaintiff's failure to obtain timely service was excusable, determined
that it was not, and denied plaintiff's motion.

The division concludes that the district court abused its discretion in failing to analyze the Rule 60(b) motion under the three-part test articulated in *Craig v. Rider*, 651 P.2d 397 (Colo. 1982). That test requires the district court to consider not just whether the neglect that resulted in the order of dismissal was excusable, but also whether the plaintiff has alleged a meritorious claim and whether relief from the order would be consistent with equitable considerations.

Accordingly, the division vacates the order and remands to the district court for application of the proper legal standard.

In doing so, the court rejects plaintiff's argument that the notice of dismissal required under Rule 4(m) must issue after expiration of the deadline for obtaining service.

COLORADO COURT OF APPEALS **2018COA29**

Court of Appeals No. 16CA1369
Adams County District Court No. 16CV30543
Honorable Ted C. Tow III, Judge

Ladee Taylor,

Plaintiff-Appellant,

v.

HCA-HealthONE LLC, d/b/a/ North Suburban Medical Center; The Women's Health Group, P.C.; Cindy E. Long, M.D.; Stacey L. Hennesy, M.D.,

Defendants-Appellees.

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE HARRIS
Furman, J., concurs
Berger, J., concurs in part and dissents in part

Announced March 8, 2018

Greer & Van Donselaar, PLLC, Marlo J. Greer, Denver, Colorado; Foster Graham Milstein Calisher, LLP, Brian Proffitt, Chip Schoneberger, Denver, Colorado, for Plaintiff-Appellant

Dickinson Prud'Homme Adams LLP, Gilbert A. Dickinson, Molly G. Hoffman, Denver, Colorado, for Defendant-Appellee HCA-HealthONE LLC, d/b/a North Suburban Medical Center

Jaudon & Avery LLP, David H. Yun, Jared R. Ellis, Denver, Colorado, for Defendants-Appellees Cindy E. Long, M.D.; Stacey L. Hennesy, M.D.; and The Women's Health Group, P.C.

¶ 1	Ladee Taylor's medical malpractice lawsuit was dismissed after she failed to serve the defendants, Cindy E. Long, M.D.; Stacey L. Hennesy, M.D.; The Women's Health Group, P.C.; and HCA-HealthONE LLC, d/b/a North Suburban Medical Center, with a copy of her complaint within the time allotted by the district court's delay reduction order.

¶ 2	On appeal, she contends that the district court failed to provide the requisite notice before dismissing the action and applied the wrong legal standard in evaluating whether she had demonstrated excusable neglect.  We disagree with the first contention, but we agree with the second.  Therefore, we vacate the court's order dismissing Taylor's lawsuit and remand for further findings.

## I.	Background

### A.	The Events Giving Rise to the Lawsuit

¶ 3	In September 2013, Taylor underwent a laparoscopic hysterectomy.  Following the surgery, Taylor experienced pelvic pain so substantial that she could not tolerate sitting at work.  Her doctor, who had performed the surgery, prescribed medication for a urinary tract infection, but the medication did not alleviate Taylor's

1

symptoms because she did not have a urinary tract infection. Two weeks later, Taylor had a second follow-up visit during which she continued to complain of bladder pain.

¶ 4     Though the pain persisted, the second follow-up visit was Taylor's last. Her doctor decided to end treatment because Taylor no longer had private insurance and instead was covered by Medicaid. Taylor was not referred to another doctor.

¶ 5     Finally, in April 2014, Taylor went to the emergency room, complaining of "constant, throbbing pelvic pain with discharge." She was informed that she had a "residual surgical device in her vagina that was imbedded in scar tissue and protrud[ing] into the rectum." A computed tomography (CT) scan showed what appeared to be a uterine manipulator cup from the hysterectomy.

¶ 6     Later that month, Taylor underwent surgery to remove the cup, which was imbedded behind her bladder. She was subsequently diagnosed with urinary incontinence, chronic pelvic pain, bladder spasm, and levator spasm — injuries that she says are permanent.

## B. Procedural History of the Lawsuit

¶ 7    On March 31, 2016, Taylor filed a medical malpractice action against her doctor, a second doctor who assisted in the surgery, the doctors' medical practice, and the medical center where the procedure was performed.

¶ 8    Under C.R.C.P. 4(m), unless the court specifies a different time for service or the plaintiff requests an extension, service must be effectuated within sixty-three days of filing the complaint — or, in this case, by June 2, 2016.  Taylor's lawyer did not immediately serve the defendants, and, on May 18, 2016, the district court issued a delay reduction order, directing Taylor to serve the defendants within thirty-five days (or June 22, 2016) or the lawsuit would be dismissed.  On June 28, 2016, when proof of service had not been filed, the court dismissed the case "without prejudice."

¶ 9    By that time, though, the statute of limitations had run. Therefore, despite the district court's dismissal of the lawsuit "without prejudice," Taylor could not refile the complaint.

¶ 10    So Taylor's lawyer took the following immediate action: on June 28, the date of the order of dismissal, counsel filed a motion requesting a vacation of the dismissal order and a seven-day

3

extension of time to serve the defendants.  In the motion, counsel explained that her docketing system had apparently malfunctioned during her transition from her prior law firm to her current firm. She sought relief from the court's order under C.R.C.P. 60(b) based on inadvertence or excusable neglect.  Then, also on June 28, counsel served three of the four defendants: the doctor who had performed the surgery, the medical practice, and the medical center.  The next day, the remaining defendant was served.

¶ 11    The district court was not persuaded by Taylor's hastily filed Rule 60(b) motion.  Without holding a hearing, it denied the motion in a short written order, concluding that counsel's docketing errors constituted "common carelessness and negligence" not amounting to excusable neglect.

¶ 12    Nonetheless, a week later, the medical center filed its answer and jury demand.  Shortly thereafter, counsel for another defendant sought an extension of time to file her answer.

¶ 13    In the meantime, Taylor filed a motion to reconsider under C.R.C.P. 59, in which she provided a fuller explanation of the docketing problems.  In an affidavit attached to the motion, counsel told the court that a few weeks before she filed the complaint, her

4

case management and calendaring software had somehow been disabled, which apparently deleted all of her docketed deadlines from her calendaring program. After some "troubleshooting" with a technician from the software company, it appeared that the problem had been resolved and that the re-enabled software had re-entered the pre-existing deadlines into the computer. But further investigation — necessarily conducted after she filed her June 28 motion to vacate the dismissal order — revealed that many of the docketing entries had not automatically been re-entered. A technician with whom counsel spoke could not explain why some of the entries were re-entered upon re-enabling of the software, but others were not. The deadline for obtaining service on Taylor's complaint had been deleted, but not automatically re-entered.

¶ 14     As for the district court's delay prevention order, counsel said that neither she nor her law partner had received it on their office computers. Instead, the order appeared on her cell phone. Counsel explained that her practice was not to open and read court documents on her cell phone, primarily because she could not access her case management and calendaring system from her phone. An exhibit to the motion appeared to show that counsel had

5

not received an electronic notification of the delay reduction order from the court's filing system on her computer, and another exhibit confirmed that the delay reduction order had not been opened by counsel.

¶ 15    In the motion, counsel also argued that the district court had applied the wrong standard in denying her earlier motion to vacate the dismissal order.  Under *Craig v. Rider*, 651 P.2d 397 (Colo. 1982), she contended, the court should have considered not just whether the error arising from the software malfunction constituted excusable neglect on its own, but also whether she had asserted a meritorious claim in the underlying medical malpractice suit and whether granting relief would be consistent with considerations of equity.

¶ 16    Before the court could rule on the Rule 59 motion, Taylor filed a notice of appeal of the denial of the Rule 60(b) motion.  The district court then declined on jurisdictional grounds to decide the Rule 59 motion, and that motion was eventually deemed denied. Taylor later amended her notice of appeal to include an appeal of the denial of the Rule 59 motion.

## II.    Notice Under C.R.C.P. 4(m)

¶ 17    We turn first to what we consider a threshold argument by Taylor that the district court's dismissal order was invalid under C.R.C.P. 4(m) — an argument that, if successful, would obviate the need to determine whether the court erred in its excusable neglect analysis.

¶ 18    According to Taylor, the district court's delay reduction order was premature and therefore could not constitute the requisite notice under Rule 4(m).  In the absence of proper notice, she says, the district court's dismissal order was invalid.

¶ 19    We interpret rules of civil procedure in the same manner as statutes, applying similar principles of construction.  *In Interest of M.K.D.A.L.*, 2014 COA 148, ¶ 5.  We must therefore interpret the rule according to its commonly understood and accepted meaning. *Antero Res. Corp. v. Strudley*, 2015 CO 26, ¶ 15.

¶ 20    Rule 4(m) provides:

> Time Limit for Service.  If a defendant is not served within 63 days (nine weeks) after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — shall dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff

7

shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under rule 4(d).

¶ 21 Taylor contends that, consistent with the plain language of the rule, the court must provide notice *after* the deadline for obtaining service has expired. But here, the district court issued its delay reduction order on May 18, more than two weeks before the sixty-three-day deadline was set to expire, and therefore the delay reduction order could not have served as proper notice that the action would be dismissed based on her failure to effectuate service.

¶ 22 Under Taylor's reading, the expiration of the sixty-three-day deadline is a condition precedent to both notice and dismissal: if the defendant is not served within sixty-three days, then the court (1) must issue a notice and (2) may dismiss the action without prejudice or impose a new deadline for service.

¶ 23 But we read the sixty-three-day deadline as a condition precedent only to dismissal or a new deadline. Our reading finds support in the structure of the rule's first sentence: without the intervening clause, the sentence instructs that "[i]f a defendant is not served within [the deadline], the court . . . shall dismiss the

8

action without prejudice . . . or order that service be made within a specified time." C.R.C.P. 4(m). The intervening clause, which comes between "the court" and "shall dismiss" describes how "dismissal" can come about — either via a motion by one of the parties or on the court's own motion, but if the latter, only after notice to the plaintiff. In other words, while Taylor reads the word "notice" to relate to the sixty-three-day deadline for service, we read the word "notice," based on its placement in the text of the rule, to relate to "dismissal." *See Wolf Creek Ski Corp. v. Bd. of Cty. Comm'rs*, 170 P.3d 821, 825 (Colo. App. 2007) (in interpreting statute, court looks at "the context in which a statutory term appears" (quoting *Robinson v. Colo. State Lottery Div.*, 155 P.3d 409, 413 (Colo. App. 2006))).

¶ 24 Moreover, under Taylor's interpretation, although the rule presents two options for the court — dismissal of the action or an instruction that "service be made within a specific time" — the court would always be forced to exercise the second option. In this case, for example, Taylor says that the court could not issue a notice until she failed to comply with the sixty-three-day deadline. And the notice would have to advise the plaintiff of her noncompliance

9

before a subsequent dismissal order could be entered. But a notice of noncompliance and possible dismissal at some time in the future would then create, in every case, a new deadline for effectuating service — that is, a "specified time" within which "service [must] be made." Thus, Taylor's reading effectively renders the dismissal option superfluous, a result we avoid in construing the rule. *See Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005) ("We construe a statute so as to give effect to every word, and we do not adopt a construction that renders any term superfluous.").

¶ 25 We therefore conclude that the rule requires notice before dismissal, but does not require notice after expiration of the service deadline.

¶ 26 Still, we do not mean to establish a rule that *any* notice prior to dismissal, no matter its timing, would necessarily suffice. The purpose of the notice is to spur counsel to action, with a warning that the window for obtaining service is closing and that a failure to meet the deadline might have dire consequences. A boilerplate delay reduction order issued within a matter of days of the filing date may not serve the rule's intended purpose.

10

¶ 27    We have no concern about the timing or content of the court's order here, though.  Just a couple of weeks before the expiration of the Rule 4(m) deadline, the court issued an order specifically addressing counsel's obligation to obtain service on the defendants.

¶ 28    Thus, Taylor was not entitled to additional notice beyond the delay reduction order, and the district court's June 28 order of dismissal was therefore valid.

## III.    Rule 60(b) Motion

¶ 29    We now turn to Taylor's argument that the court erred in failing to apply the three-factor *Craig* test in evaluating her Rule 60(b) motion to set aside the order of dismissal.

## A.    Standard of Review

¶ 30    We review the district court's denial of a Rule 60(b) motion for an abuse of discretion.  *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010).  A district court abuses its discretion if it applies an incorrect legal standard.  *BS & C Enters., LLC v. Barnett,* 186 P.3d 128, 130 (Colo. App. 2008); *see also Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1115-16 (Colo. 1986) (The court "must exercise [its] discretion within the framework of, rather than in disregard of, the controlling legal

11

norm."). Whether the trial court applied the correct legal standard is a question of law that we review de novo. *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 7.

### B. The Three-Factor *Craig* Test

¶ 31 C.R.C.P. 60(b) permits a court to relieve a party from a final judgment or order. Such relief may be granted where a party establishes mistake, inadvertence, surprise, or excusable neglect. C.R.C.P. 60(b)(1).

¶ 32 *Craig* articulated a three-factor test to guide a district court's discretion in determining whether to set aside a final judgment or order based on excusable neglect. 651 P.2d at 402. Though the plaintiff in *Craig* sought relief under the probate code, not Rule 60(b), the supreme court concluded that motions to vacate formal testacy orders were sufficiently analogous to motions to vacate judgments under Rule 60(b) such that the test for the latter should apply. *Id.* at 401; *see also Buckmiller*, 727 P.2d at 1116 ("Implicit in *Craig* is the recognition that a motion to set aside a default under C.R.C.P. 55(c) and a motion to vacate a judgment under C.R.C.P. 60(b) on the basis of excusable neglect are sufficiently analogous to justify the application of the same standards to either motion.").

12

¶ 33 Under *Craig*, the district court must consider (1) whether the neglect that resulted in entry of judgment was excusable; (2) whether the moving party has alleged a meritorious claim (or defense); and (3) whether relief from the challenged order would be consistent with equitable considerations such as protection of action taken in reliance on the order and prevention of prejudice by reason of evidence lost or impaired by the passage of time. 651 P.2d at 402. Later cases from the supreme court have confirmed that "these three factors constitute a balancing test and each must be considered in resolving the [Rule 60(b)] motion." *Goodman*, 222 P.3d at 321 (citing cases applying the balancing test).

¶ 34 The district court's consideration of these factors must be guided by the general rule that the requirements for vacating a judgment that is not based on the merits "should be liberally construed in favor of the movant, especially where the motion has been promptly made." *Craig*, 651 P.2d at 402. This rule promotes the long-standing policy favoring resolution of disputes on their merits. *Id.*

## C. Application of the *Craig* Test

¶ 35 In denying Taylor's motion to vacate the dismissal order, the district court first noted that because Taylor had sought an extension of time to serve the defendants only after the deadline for obtaining service had run, she had to show excusable neglect for missing the deadline. Then the court concluded that "common carelessness and negligence by a party's attorney does not amount to excusable neglect," and therefore, "improperly docketing due dates," which "amount[ed] to mere negligence," could not constitute excusable neglect. The court found support for its conclusion in *Malm v. Villegas*, 2015 CO 4, which the court said stood for the proposition that any delay beyond Rule 4(m)'s deadline could not be found reasonable simply because the plaintiff had made diligent efforts to serve the defendants. And because here, according to the court, Taylor had made no efforts to obtain timely service, additional time for service was unwarranted.

¶ 36 Taylor argues that the court's order failed to even consider the second and third *Craig* factors — whether she had a meritorious claim and whether reinstatement of her complaint was consistent

14

with equitable considerations — and, as for the first factor, it gave short shrift to her reasons for missing the deadline.

¶ 37    The defendants mount a three-part defense to Taylor's argument.  They say that *Malm* imposes a heightened "excusable neglect" standard that displaces the *Craig* test; even if the *Craig* test applies here, Taylor waived her right to have the district court apply it by failing to cite the *Craig* factors in her motion; and, even if the *Craig* test applies, and the district court should have applied it, Taylor is not entitled to any relief under *Craig*.

     1.    *Malm* Does Not Impose a Heightened "Excusable Neglect" Standard That Displaces *Craig*'s Three-Factor Test

¶ 38    *Malm* addressed the reasonableness, under C.R.C.P. 41(b), of a delay of seven and a half years between the filing and service of the complaint.  The plaintiff, who had sustained injuries in a traffic accident, filed her complaint against the other driver one month before expiration of the statute of limitations.  *Malm*, ¶ 3.  When, two years later, the plaintiff asserted that she had been unable to locate the driver, the district court administratively closed the case. *Id.* at ¶ 5.  Five years passed with no activity.  The plaintiff later located and served the defendant in Germany and moved to reopen

15

the case.  In response, the defendant filed a motion to dismiss with prejudice under Rule 41(b), arguing that plaintiff's failure to serve her within a reasonable time amounted to a failure to prosecute. When the district court denied defendant's motion, she sought relief in the supreme court under C.A.R. 21.

¶ 39     The supreme court began by reiterating its recent pronouncements in *Garcia v. Schneider Energy Services, Inc.*, 2012 CO 62 — the filing of a complaint commences an action; therefore, the statute of limitations "in and of itself . . . imposes no direct limitation on the time for service following commencement by filing"; as a consequence, "service of process can be effected" after the applicable statute of limitations has run; and thus, "the appropriate inquiry concerning the time allowed for service of process in an action commenced by filing is whether the defendant was served within a reasonable time following the filing date, rather than a reasonable time following the running of the applicable statute of limitations." *Malm*, ¶¶ 13, 15.

¶ 40     Next, the court acknowledged that although the defendant in *Garcia* had not received notice of the lawsuit until after the expiration of the statute of limitations (seventy-one days after, to be

16

precise, *see Garcia,* ¶ 6), the court had nonetheless characterized the 116 days between the filing of the complaint and notice to the defendant as "a relatively short period of time" and therefore reasonable. *Malm,* ¶ 18 (quoting *Garcia,* ¶ 16).

¶ 41 The court cautioned, however, that where service after filing is not actually accomplished until after the expiration of the statute of limitations, "any delay in service beyond that 'relatively short' initial period cannot be found reasonable simply because the plaintiff made diligent efforts to locate the defendant." *Id.* at ¶ 19. Rather, to "justif[y] [a] longer delay" that extends beyond the statute of limitations, the plaintiff must establish wrongful conduct by the defendant or some formal impediment to service. *Id.* at ¶¶ 17, 19.

¶ 42 The court specifically declined to define the outer limit of the "relatively short initial period" within which service after filing is "presumptively reasonable," except to say that the period would be "measured in days rather than years." *Id.* at ¶¶ 19, 20. A precise definition was unnecessary, according to the court, because "[b]y virtually any standard," the seven-and-a-half-year delay between filing and service "far exceeded the relatively short initial period not

17

requiring specific justification" and was therefore unreasonable. *Id.* at ¶ 20.

¶ 43   The defendants say that, after *Malm*, a complaint is subject to dismissal if it is served outside the statute of limitations and also outside the "relatively short" presumptively reasonable period for obtaining service after filing.   Though that period was left undefined by the *Malm* court, the defendants define it as the sixty-three-day period set forth in Rule 4(m).  Thus, they argue, because Taylor's complaint was served after the statute of limitations had run, and after the sixty-three-day deadline had expired, she could demonstrate "excusable neglect" only by showing wrongdoing by the defendants or a formal impediment to service.

¶ 44   We are not persuaded that *Malm* announced *any* bright-line rule, much less a rule that, where the statute of limitations has run, a complaint is subject to dismissal if not served within sixty-three days, except upon a showing of specific obstacles to service. In our view, *Malm* stands for the more uncontroversial proposition that an extraordinary delay in effecting service — a delay measured in years rather than days — can be justified only by extraordinary

circumstances. *See id.* ("[C]ertain extraordinary circumstances might excuse even this [seven-and-a-half-year] delay . . . .").

¶ 45 The defendants' reading of *Malm* cannot be reconciled with the language of the opinion or the text of Rule 4(m).

¶ 46 As we have noted, the *Malm* court expressly declined to equate the "relatively short initial period" within which service would be deemed presumptively reasonable with the sixty-three-day period in Rule 4(m). Rather, the court determined that it was "unnecessary for [it] to resolve the applicability of [Rule 4(m)] to th[e] case," as the case arose under Rule 41(b). *Id.* at ¶ 19. Moreover, the court acknowledged that, under *Garcia,* a 116-day delay between filing of the complaint and notice to the defendant amounted to a "relatively short period of time." *Id.* at ¶ 18 (quoting *Garcia,* ¶ 16); *see also Garcia,* ¶ 18 ("[W]e conclude that 116 days after the filing of the original complaint is a reasonable time for notice . . . .").

¶ 47 And even under Rule 4(m) itself, the sixty-three-day period for effecting service is not a hard deadline. If the plaintiff fails to obtain service within that time, the court may — even without a showing of good cause — "order that service be made within a specified time" after the deadline. C.R.C.P. 4(m). In fact, in its delay reduction

19

order, the district court sua sponte extended the deadline for service in this case. The defendants have not suggested that the court's new eighty-three-day deadline for service was unreasonable or otherwise improper under *Malm.* And if eighty-three days constitutes a "relatively short initial period" for obtaining service, then sixty-three days cannot be the initial period's outer limit.

¶ 48    Thus, we reject the defendants' argument that *Malm* imposes a heightened "excusable neglect" standard that would apply to the circumstances of this case.

2.    Taylor Did Not Waive Application of the *Craig* Test

¶ 49    Next, we can quickly dispense with the defendants' argument that, even if *Craig*'s three-factor test provides the proper analytical framework for resolving Taylor's Rule 60(b) motion, Taylor waived her right to have the court apply the test by failing to cite *Craig* and its progeny, or to argue the factors, in her motion.

¶ 50    While a specific reference to the *Craig* factors would have been helpful, it was not necessary. Taylor fairly presented the issue to the district court: she filed a Rule 60(b) motion to set aside a judgment entered without consideration of the merits on the basis of excusable neglect. Resolution of such a motion is governed by a

20

particular standard, which the district court was obliged to apply. "[D]efense counsel's inadvertence or ignorance of the law does not relieve a trial court from knowing and applying the law." *People v. Thompson,* 2017 COA 56, ¶ 245 (Dunn, J., concurring in part and dissenting in part).

¶ 51 Still, the defendants say that, without a specific reference to *Craig* or its three-factor test, the district court might have assumed that some other "excusable neglect" test applied here. But there is no other test for determining whether, under Rule 60(b), a non-merits-based judgment should be vacated due to excusable neglect. The cases cited by the defendants involved an entirely different scenario: where, after entry of judgment on the merits, a party who has missed the deadline for filing a Rule 59 motion seeks vacation and reentry of the judgment under Rule 60(b). Under those circumstances, as one of the cited cases explains, the *Craig* test is preempted by a more stringent "unique circumstances" standard. *See Anderson v. Molitor,* 770 P.2d 1305, 1307-08 (Colo. App. 1988) *rev'd on other grounds*, 795 P.2d 266 (Colo. 1990).

¶ 52 "When there does exist a controlling legal standard . . . a court may not disregard that standard in favor of some other legal rule."

*Buckmiller*, 727 P.2d at 1115. Here, the district court failed to resolve Taylor's motion in accordance with the applicable legal standard. In doing so, the court abused its discretion. *See Crossgrove*, ¶ 7 ("A trial court necessarily abuses its discretion if its ruling is based on an incorrect legal standard.").

### 3. Taylor May Be Entitled to Relief Under the *Craig* Test

¶ 53 The defendants urge us to forgo a remand to the district court for application of the *Craig* test because, they say, Taylor is not entitled to reinstatement of her complaint as a matter of law. We disagree.

¶ 54 Excusable neglect has a "flexible meaning," and a proper analysis requires "consideration of the reasons for the neglect and the surrounding circumstances." *Goodman*, 222 P.3d at 322. The determination of whether a movant has established excusable neglect therefore involves a "fact-intensive inquiry," *id.* at 319, and a careful weighing of the evidence in accordance with the controlling legal standard, *Buckmiller*, 727 P.2d at 1115.

¶ 55 To be sure, in some cases, after the development of a full record, the existence of excusable neglect becomes an issue of law amenable to resolution on appeal. *See, e.g., Craig*, 651 P.2d at 407

22

(resolving all three prongs of *Craig* test in favor of plaintiff and remanding with directions to set aside the order of probate). In his concurrence in part and dissent in part, Judge Berger says this is one of those cases — but he would reverse the judgment and order the district court to reinstate Taylor's complaint. We are not entirely unsympathetic to Judge Berger's position, but we think a more circumspect approach is warranted. Still, we all agree that, on this record, we surely cannot say that Taylor's arguments fail as a matter of law. Accordingly, a remand is necessary. *See Buckmiller*, 727 P.2d at 1117 (remanding for consideration of the *Craig* factors).

### a. Whether the Neglect was Excusable

¶ 56    A party's conduct constitutes excusable neglect when the "surrounding circumstances would cause a reasonably careful person similarly to neglect a duty," *Goodman*, 222 P.3d at 319, or, put another way, when "unforeseen circumstances" would cause a "reasonably prudent person to overlook a required act in the performance of some responsibility," *Colo. Dep't of Pub. Health & Env't v. Caulk*, 969 P.2d 804, 809 (Colo. App. 1998).

¶ 57    The district court characterized counsel's excuse for the untimely service as "improperly docketing due dates," then dismissed that excuse as "common carelessness."  But in her Rule 59 motion, Taylor's counsel explained that she had not improperly docketed due dates; to the contrary, according to counsel, upon filing Taylor's complaint, "it appeared that all dates were docketed in [the software program], including the 63-day service deadline under C.R.C.P. 4(m)."  The problem, according to counsel, was that her docketing software had somehow been disabled shortly before she filed the complaint.  Though she believed the issue had been resolved, some of the dates that appeared to be docketed were not in fact saved in her computer, "despite counsel's efforts."

¶ 58    Thus, the question is whether the software malfunction amounted to "unforeseen circumstances," and whether a reasonably prudent person might have made the same error in relying on docketing software to calendar deadlines.  We leave the answer to that question to the district court.

¶ 59    The defendants say that counsel's explanation for the untimely service had to be presented in her Rule 60(b) motion or not at all.

Therefore, they argue, the later, more-detailed affidavit, appended to her Rule 59 motion, came too late.

¶ 60   We reject that argument — not because the affidavit necessarily constitutes "newly-discovered evidence," as Taylor contends (we need not decide that question), but because, in our view, the *Craig* test contemplates an evidentiary hearing, at which the plaintiff may present additional evidence related to the three *Craig* factors.  Because the district court failed to apply the correct test, it did not even consider holding a hearing.  Yet, the supreme court has instructed that, in assessing excusable neglect, "the preferred procedure is to consider all three factors in a single hearing" to promote an "informed decision" by the trial court. *Buckmiller*, 727 P.2d at 1116.  In light of that instruction, we are reluctant to endorse a rule that strictly limits the evidence before the court to the precise information provided in the plaintiff's Rule 60(b) motion.

b.     Merits of the Claim

¶ 61   A movant must support an assertion of a meritorious claim by averments of fact, not simply legal conclusions.  *Craig*, 651 P.2d at 403.  Preferably, the factual allegations "should be in the form of a

25

tendered pleading," like a complaint or, if a claim of meritorious defense is made, an answer. *Id.* The allegations must be set forth with sufficient particularity to show that a claim is "meritorious, not frivolous." *Id.*

¶ 62 The defendants say that Taylor could not establish a meritorious claim without an affidavit from a certifying physician. Though Taylor submitted such an affidavit, certain defendants contend that the submission was untimely and the medical center contends that it should not have been filed under seal.

¶ 63 The factual allegations, however, appeared in the complaint itself — the "preferabl[e]" form for presenting the allegations, *id.* — and the gist of the complaint was set forth in the Rule 60(b) motion, with Taylor's allegation that "a retained object was left inside Plaintiff following surgery." Moreover, the complaint certified that a physician meeting certain statutory criteria had reviewed the facts relevant to the allegations and had deemed the claims nonfrivolous.

¶ 64 In ruling on a meritorious claim, "a trial court should not attempt to evaluate the ability of the movant to establish the pleaded facts at trial." *Id.* at 404. Even when supplementary testimony is received at the evidentiary hearing, the focus is on the

"legal sufficiency of the allegations" rather than "their truth." *Id.* (quoting *In re Stone*, 588 F.2d 1316, 1320 (10th Cir. 1978)).

¶ 65 Though the meritorious-claim factor can generally be resolved as a matter of law, *see id.*, we think the better course is to remand for the district court to consider all three factors together, as "evidence relating to one factor might well shed light on another," and the strength of one factor might "set off" any weakness of another. *Buckmiller*, 727 P.2d at 1116.

### c. Equitable Considerations

¶ 66 Setting aside a dismissal order is, at its core, an equitable decision. The goal is to promote substantial justice. *Goodman*, 222 P.3d at 319. In determining whether Rule 60(b) relief would be consistent with equitable considerations, a district court should take into account the promptness of the moving party in filing the Rule 60(b) motion; the fact of any detrimental reliance by the opposing party on the order or judgment of dismissal; and any prejudice to the opposing party if the motion were to be granted, including any impairment of that party's ability to adduce proof at trial in defense of the claim. *Buckmiller*, 727 P.2d at 1116; *see also Goodman*, 222 P.3d at 319.

27

¶ 67    Though we leave it to the district court to weigh these considerations, we make the following observations based on the existing record.

¶ 68    First, Taylor filed her Rule 60(b) motion as promptly as a party could — on the same day as the dismissal order. When the district court denied the motion without a hearing, Taylor attempted to supplement the allegations, based on her subsequent investigation, through a timely filed Rule 59 motion.[1] To the extent a strong showing on this factor — promptness in filing the motion (showing that relief would be consistent with equitable considerations) — is in tension with a strong showing on the first factor — a thorough explanation of the cause of the neglect — the evidentiary hearing contemplated under *Craig* will generally resolve the tension, allowing for both a promptly filed motion and a more thorough presentation of evidence concerning the reason for the delay.

---

[1] Contrary to the defendants' argument, Taylor's C.R.C.P. 59 motion, filed on July 26, 2016, was timely. The Rule 59 motion was a request for the court to reconsider its order of July 12, 2016, denying the C.R.C.P. 60(b) motion, not its order dismissing the case. The defendants do not otherwise challenge the applicability of Rule 59 to an order denying a Rule 60(b) motion; thus we address only the timing of the motion.

¶ 69    Second, Taylor served the defendants twenty-six days after the period for service expired under Rule 4(m) (one defendant was served twenty-seven days later) and six (or seven) days after the deadline set forth in the delay reduction order — meaning eighty-nine days after filing the complaint.  The delay reduction order gave Taylor eighty-three days to obtain service after filing, and we note that none of the defendants have contended that the eighty-three-day delay was unreasonable or prejudicial.  Thus, as we see it, the primary issue is whether the additional six days so prejudiced the defendants' ability to defend the lawsuit that the equities weigh in favor of dismissal.

¶ 70    Third, by the time Taylor filed her Rule 59 motion, the medical center had already filed its answer and another defendant was preparing to do so.  The medical center says that its answer does not demonstrate an absence of detrimental reliance so much as good faith compliance with statutory deadlines, and it argues that it should not be "punished" for following the rules, when Taylor herself did not.  But that argument misses the point.  If Taylor's failure to follow the rules did not affect the defendants' course of conduct or compromise their ability to defend against her claims,

29

then the equities favor reinstatement, regardless of the medical center's commendable decision to adhere to applicable deadlines.

## IV.   Conclusion

¶ 71   We vacate the district court's order denying Taylor's Rule 60(b) motion and remand the case for further proceedings in accordance with this opinion.

JUDGE FURMAN concurs.

JUDGE BERGER concurs in part and dissents in part.

JUDGE BERGER, concurring in part and dissenting in part.

¶ 72    I agree with the majority that the trial court's order denying Taylor's motion to set aside the dismissal must be reversed.  In fact, I agree with almost everything the majority says.  I write separately only because I think, on this record, any ruling on remand other than reinstatement of Taylor's complaint would be an abuse of the trial court's discretion.  As a result, I would reverse with directions that the complaint be reinstated, and accordingly I concur in part and respectfully dissent in part.

¶ 73    The supreme court has instructed that a trial court must balance three separate factors to determine whether there is excusable neglect sufficient to set aside a judgment under C.R.C.P. 60(b)[1]:

> (1) whether the neglect that resulted in entry of judgment by default was excusable;[2]

---

[1] This test applies only to a discretionary determination to set aside a judgment under C.R.C.P. 60(b)(1).  A judgment that is void must be set aside under C.R.C.P. 60(b)(3).  *Rainsberger v. Klein*, 5 P.3d 351, 353 (Colo. App. 1999).

[2] For convenience, I refer to this factor as "first level excusable neglect" to distinguish it from the ultimate finding of excusable neglect.

31

(2) whether the moving party has alleged a meritorious claim or defense; and

(3) whether relief from the challenged order would be consistent with considerations of equity.

*Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 319 (Colo. 2010); *see also Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1116 (Colo. 1986) (applying *Craig v. Rider*, 651 P.2d 397, 401-02 (Colo. 1982)).[3]

¶ 74    I start with the first level excusable neglect factor.  The supreme court has defined first level excusable neglect as follows: "A party's conduct constitutes excusable neglect when the surrounding circumstances would cause a reasonably careful person similarly to neglect a duty.  Common carelessness and negligence do not amount to excusable neglect."  *Goodman*, 222 P.2d at 319 (quoting *In re Weisbard*, 25 P.3d 24, 26 (Colo. 2001)).

¶ 75    Applying this controlling definition, I think the trial court gave insufficient consideration to how computer systems interface with

---

[3] Early on, the court rejected the proposition that these three factors create a "balancing test."  *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 320 (Colo. 2010).  But later cases require the trial court to "balance" these three factors.  *Id.*

modern law practice.  Neither the supreme court nor this court has addressed computer glitches in the context of evaluating excusable neglect.

¶ 76    I perceive no reason to categorically exclude errors resulting from computer system problems or failures from a finding of first level excusable neglect.  To the contrary, in today's world, lawyers and virtually everyone else (including courts) rely heavily on computer hardware and software to accomplish critical tasks.  Our modern world could not function without reliance on computers.  That reliance usually benefits everyone because it makes lawyers and others more efficient; computers usually reduce the time necessary to perform a task, and thus reduce costs.  But computers fail; either the hardware or the software stops working, sometimes for inexplicable reasons.

¶ 77    The reasons offered by plaintiff's counsel in this case for her failure to timely serve the defendants — reasons that have not been contradicted by the defendants — seem to me to be the poster child of first level excusable neglect in our computer age.  Given the ubiquitous use of computers in law practice and every other aspect

of modern life, courts should adjust to the reality that computer failures happen despite a user's reasonable care.

¶ 78    The failure of Taylor's counsel to timely serve the defendants does not appear to be based on anything other than computer failures and, under any meaningful standard of excusable neglect, the showing made by Taylor's counsel satisfies the standard for first level excusable neglect.

¶ 79    There is an additional consideration that supports a finding of first level excusable neglect. Under the supreme court's cases, it is unclear how much, if at all, it matters whether the conduct that led to the error was the lawyer's conduct, or the client's. In *Buckmiller*, the court broadly addressed this concept when it stated, "the degree of negligence attributable to the client is only one factor for a court to consider in determining whether to set aside an order or judgment on the grounds of excusable neglect predicated on the gross negligence of the client's attorney." 727 P.2d at 1117 n.2. But that discussion was in the context of addressing the court-made dichotomy between regular negligence by a lawyer and gross negligence. *Id.*

¶ 80    In cases in which gross negligence is not involved, the supreme court's cases give little, if any, guidance on how the negligence of the lawyer, as opposed to the negligence of the client, should factor into the excusable neglect calculus.  It seems clear to me that the focus should be on any negligence by the client, not the lawyer, based on the policies behind C.R.C.P. 60(b).  This case is a perfect illustration.

¶ 81    There is absolutely no evidence that Taylor herself was derelict or negligent in any way in failing to timely serve the defendants.  Any fault lies entirely with her lawyer.  When, as here, there is no conceivable prejudice to the defendants in reinstating the complaint, and where the injury to the plaintiff would be severe if the complaint is not reinstated, I would conclude that the *lawyer's* negligence should play very little role in the balancing process.

¶ 82    Addressing the second and third parts of the excusable neglect test, I think it is beyond reasonable dispute that these factors strongly favor allowing Taylor's claims to be heard on their merits.  *See Goodman*, 222 P.3d at 320.

¶ 83    From the information presently available (and acknowledging that Taylor's claim has not been tested by the adversary process), it

appears that Taylor has a meritorious cause of action resulting from a foreign object being left in her body during surgery, and significant injuries suffered from that alleged malpractice. Indeed, this type of medical malpractice claim is one of the few that does not require expert testimony to make a prima facie case. *Mudd v. Dorr*, 40 Colo. App. 74, 77, 574 P.2d 97, 100 (1977).

¶ 84 The third factor weighs equally in favor of Taylor. Service was obtained within a week of the service deadline on most of the defendants. The defendants have not (and could not have) plausibly asserted any legal prejudice that they suffered as a result of the short delay in service.

¶ 85 It also is significant that unlike the defendant in *Goodman,* plaintiff's counsel here did not sit on her hands after she discovered the problem. To the contrary, on the very day that the court dismissed the case, she moved to set aside the dismissal and ultimately presented extensive evidence explaining her failure to timely serve the defendants.

¶ 86 Considering (balancing) the three components of the excusable neglect test, there is no reasonable result other than to give Taylor

an opportunity to prove her claims on the merits.[4]  "[B]ecause resolution of disputes on their merits is favored, the criteria for vacating a default judgment should be liberally construed in favor of the movant, especially when the motion is promptly made." *Goodman*, 222 P.3d at 320 (quoting *Sumler v. Dist. Court*, 889 P.2d 50, 56 (Colo. 1995)).  No other result satisfies the overarching purpose of C.R.C.P. 60(b): to do substantial justice.  *See Goodman*, 222 P.3d at 319; *Craig*, 651 P.2d at 401; *see also* C.R.C.P. 1(a) ("These rules shall be liberally construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action.").

---

[4] In my view, too many courts assume, without justification, that if a lawyer's negligence causes a party to lose her rights, the party may obtain adequate redress through the mechanism of a legal malpractice action.  In theory that is true, but in practice it is very difficult for a plaintiff to prevail in a legal malpractice action.  Indeed, the plaintiff must win on a trial within a trial, and may also have to show collectability.  *See Gibbons v. Ludlow*, 2013 CO 49, ¶ 16; *see also Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶¶ 32-49.  To be sure, some lawyers' negligence can be remedied only through a legal malpractice action.  But if a court can give relief to a deserving plaintiff without prejudicing the defendants and thus avoid the necessity of a legal malpractice action, I do not perceive any valid reason not to do so.

37

¶ 87     For these reasons, I think a remand for reconsideration by the
trial court of the excusable neglect balancing test is a waste of time.
Instead, I would reverse and remand with directions to reinstate the
complaint.

¶ 88     As may be apparent from my reasons for concluding that this
case should be remanded with directions to reinstate Taylor's
complaint, the existing law in this area is confusing and may
deserve a fresh look by the supreme court.  I say this for several
reasons.

¶ 89     First, it is inherently confusing when, as here, the ultimate
matter to be decided — excusable neglect — is comprised of a three-
factor test that includes excusable neglect as one of its elements.
Unsurprisingly, trial courts misconstrue the nature of the inquiry
when excusable neglect is both required to set aside the judgment
and required to determine if there is excusable neglect.  There are
other ways to formulate the first factor without repeating in that
factor the overarching determination that must be made.

¶ 90     Second, the rule that gross negligence of the lawyer is not
imputed to the client, but regular negligence may be imputed for
the purpose of determining whether there is excusable neglect,

seems strange at best and illogical at worst. *See Buckmiller*, 727 P.2d at 1116 (adhering to distinction between regular negligence and gross negligence made in *Coerber v. Rath*, 164 Colo. 294, 435 P.2d 228 (1967)); *cf. Moses v. Diocese of Colo.*, 863 P.2d 310, 329 n.27 (Colo. 1993) (noting that a principal may be responsible for a tort committed by its agent, but typically not for an intentional tort of its agent). Ordinarily, gross negligence is seen as *more* blameworthy than regular negligence.

¶ 91     I would instead focus on any fault of the client. Broadening the rule adopted in *Coerber*, I would generally not impute the lawyer's negligence to the client when the client herself is blameless. There are other fairer and more effective ways to police lawyers' competence than visiting lawyers' sins on their clients. *See* Colo. RPC 1.1 (addressing a lawyer's duty of competence); Colo. RPC 1.3 (addressing a lawyer's duty of diligence); *see also* C.R.C.P. 251.1 to 251.34 (rules governing lawyer discipline and disability).

¶ 92     Third, while there inevitably will be close cases, I think important guidance could be given to trial courts beyond the inherently vague directions to balance three very disparate factors. *See People v. Brown*, 2014 CO 25, ¶ 45 (Márquez, J., dissenting)

(criticizing a "mechanical test [that] requires trial courts to consider a litany of factors, but . . . offers no guidance to trial courts on how to use those factors in striking a balance"); *see also Rutan v. Republican Party of Ill.*, 497 U.S. 62, 96 (1990) (Scalia, J., dissenting) (arguing that a multipart balancing test leads to results "favored by the personal (and necessarily shifting) philosophical dispositions of a majority of [the] Court.").

¶ 93 In those cases in which the fault lies entirely with the lawyer, the plaintiff has a meritorious cause of action, and the defendants will not suffer any legal prejudice if the default judgment or dismissal is vacated, I would conclude that it would be an abuse of discretion not to reinstate the case.

¶ 94 On the other hand, when the defendants will suffer serious prejudice by reinstatement of the case and the plaintiff herself is blameworthy, it will generally be an abuse of discretion to set aside the judgment.