The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 15, 2020

**2020COA146**

**No. 19CA1325, *State Farm v. Steul* — Civil Procedure — Process — Time Limit for Service — Dismissal of Actions — Involuntary Dismissal by Defendant**

A division of the court of appeals considers whether a trial

court's orders extending the time for service under C.R.C.P. 4(m)

preclude it from subsequently granting a motion to dismiss for

failure to prosecute under C.R.C.P. 41(b)(1) based on the plaintiff's

extended delay in serving the defendant. Because a court *may*

grant an extension under Rule 4(m) without finding good cause for

delay, but it *must* evaluate the justifications for delay, and potential

prejudice to defendant, before granting dismissal under Rule

41(b)(1), the division concludes that a court's discretion under Rule

41(b)(1) is not limited by previous Rule 4(m) orders when the orders

make no good cause finding.

The division further concludes that the trial court properly applied *Malm v. Villegas*, 2015 CO 4, and did not err in failing to consider whether the standards articulated in *Malm* are altered when a defendant is served pursuant to section 42-7-414(3), C.R.S. 2019.

COLORADO COURT OF APPEALS                              **2020COA146**

Court of Appeals No. 19CA1325
Arapahoe County District Court No. 16CV31910
Honorable Frederick T. Martinez, Judge

State Farm Mutual Auto Insurance Company,

Plaintiff-Appellant,

v.

Julie E. Steul,

Defendant-Appellee.

ORDER AFFIRMED

Division IV
Opinion by JUDGE RICHMAN
Terry and Graham*, JJ., concur

Announced October 15, 2020

Greenberg & Sada, P.C., Alan Greenberg, Englewood, Colorado, for Plaintiff-Appellant

Mary B. Pucelik, Lone Tree, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    Plaintiff, State Farm Mutual Auto Insurance Company (State Farm), appeals a trial court order dismissing its suit against defendant, Julie E. Steul, for failure to prosecute its claim.  We affirm.

## I.    Background

¶ 2    According to the allegations of the complaint, Steul and State Farm's insured, Michael Fehringer, were involved in a traffic accident on August 9, 2013.  State Farm subsequently compensated Fehringer for his injuries.  As Fehringer's subrogee, it sought to recover from Steul.  Steul was notified of the claim through her insurer, Allstate.  However, negotiations between Allstate and State Farm ultimately proved fruitless.

¶ 3    On August 8, 2016, one day before the applicable three-year statute of limitations expired, State Farm filed its complaint against Steul.  *See* § 13-80-101(1)(n)(I), C.R.S. 2019.  At the time of filing, State Farm had not served Steul.  The next day, the trial court issued a delay reduction order requiring State Farm to file a return of service within sixty-three days of filing the complaint.  *See* C.R.C.P. 4(m) (stating that once a complaint is filed, a plaintiff has sixty-three days to serve a defendant before the court may take

adverse action).  Thus, service was to be effected by October 10, 2016.

¶ 4     On October 14, 2016, the trial court notified State Farm that the case could be dismissed without prejudice thirty-five days from the date of the order unless a return of service, notice of dismissal, stipulation for settlement, or statement showing good cause was filed.  *Id.* (allowing extension of the time for service either in the court's discretion or for good cause shown).

¶ 5     Thereafter, State Farm requested and was granted two additional extensions of time based on allegations that it was having difficulty locating Steul, one on November 22, 2016, and one on March 24, 2017.  In the March 24 order, the trial court noted that the case was over 225 days old without service having been made.  It therefore granted only a 90-day extension, although State Farm had requested 120 days.

¶ 6     On June 22, 2017, the day the second extension expired, State Farm filed a motion for substituted service under C.R.C.P. 4(f), seeking permission to serve Steul's attorney.  The trial court did not rule on the motion.  Instead, on June 23, 2017, it dismissed the

2

case without prejudice due to the lengthy passage of time without service and the expiration of its June 22 deadline.

¶ 7    State Farm took no action for nearly six months. However, on December 1, 2017, it filed a motion to reinstate the case pursuant to C.R.C.P. 60(b), asserting that, in the interval, it had made efforts to "make certain that the Defendant still resides at the address known to the Plaintiff and that there are persons to whom service may be had under Rule 4(f). Those are satisfied." The court granted the motion on January 17, 2018, giving State Farm leave to refile its motion for substituted service. For reasons not apparent from the record, State Farm did not do so.

¶ 8    On March 5, 2018, the trial court issued another delay reduction order, requiring that State Farm take action within thirty-five days. The order was met with another motion for extension of time. The court extended the deadline for service to June 30, 2018.

¶ 9    On June 8, State Farm filed another motion for substituted service, this time requesting permission to serve Steul's relative in New York. The court granted the motion but did not extend the deadline for service beyond June 30. On July 2, State Farm

notified the court that service was in process and a return of service would be filed within approximately ten days. The court extended the deadline for service to July 23.

¶ 10    State Farm eventually attempted service on Steul's relative, and filed a return on July 16. However, on September 24, 2018, the trial court deemed service insufficient because the New York process server did not complete service in accordance with Rule 4(f). The court mandated new proof of substituted service by October 29, 2018.

¶ 11    On October 30, State Farm filed a "status update" in which it asked for an extension of the deadline until December 10, so that it could obtain a different New York process server. The court granted the extension but State Farm did not thereafter effect service on Steul via her relative, apparently because it could not locate a New York process server willing to comply with Rule 4(f).

¶ 12    On December 10, 2018, State Farm's attorney filed a motion to serve Steul under section 42-7-414(3)(a), C.R.S. 2019, a provision that permits service upon a defendant through his or her insurance company. The motion stated, "Very recently, the undersigned learned of the existence of [this statute] from a pleading in an

4

unrelated case. The undersigned apologizes for his lack of knowledge of this provision . . . ." The motion was granted, with an order that return of service was to be "promptly filed." State Farm served Allstate and filed proof of service on December 18, 2018.

¶ 13    In January 2019, Steul filed a motion to quash untimely service of process and dismiss the complaint, citing Rule 4(m), and *Malm v. Villegas*, 2015 CO 4 (discussing dismissal for failure to prosecute under C.R.C.P. 41(b)). She asserted that State Farm had not effected service within a reasonable time.

¶ 14    After an evidentiary hearing at which Steul testified, the trial court granted Steul's motion and, relying on *Malm*, concluded that the delay in serving her was unreasonable. In reaching this conclusion, the court found the following:

- At the time of the accident, Steul had provided her correct home address and insurance information.

- Steul was aware of the subrogation claim and had hired a lawyer to defend her, but later dismissed the lawyer because she believed the case to be inactive.

- Steul was prejudiced by the delay because, in addition to the likelihood that memories had faded, she had sold her

5

car a year and six months after the accident, and the identity of an "elderly couple" mentioned in the police report was unknown.

- Steul had not moved since the accident, had retained the same insurance carrier, and had not attempted to secrete herself.

¶ 15 State Farm now appeals the order dismissing its claim. It contends that the trial court erred by (1) applying the wrong law to the question of dismissal; (2) contradicting its own orders extending the time for service under Rule 4(m); and (3) failing to consider whether, based on public policy concerns, a plaintiff who effects service pursuant to section 42-7-414(3) must be given an extended time in which to serve a defendant.

## II.    Standards of Review

¶ 16 A trial court has broad discretion when determining whether to dismiss a case under Rule 41(b)(1). *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 45. We therefore review the trial court's decision for an abuse of discretion. *Malm,* ¶ 2; *Powers v. Prof'l Rodeo Cowboys Ass'n*, 832 P.2d 1099, 1104 (Colo. App. 1992).

¶ 17    A trial court abuses its discretion only where its decision was manifestly arbitrary, unfair, unreasonable, or contrary to law. *Streu v. City of Colorado Springs ex rel. Colo. Springs Util.*, 239 P.3d 1264, 1268 (Colo. 2010); *23 LTD v. Herman,* 2019 COA 113, ¶ 40. We need not agree with the trial court's decision. All that is required is that the court not "exceed[] the bounds of the rationally available choices." *Streu,* 239 P.3d at 1268 (quoting *Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't,* 533 F.3d 1183, 1186 (10th Cir. 2008)).

¶ 18    When our analysis requires us to construe statutes or rules of civil procedure, we review de novo. *Curry v. Zag Built LLC*, 2018 COA 66, ¶ 22.

### III.    Dismissal Under Rule 41(b)

¶ 19    State Farm asserts that the trial court erred because it relied on *Malm,* and its discussion of the doctrine of laches, rather than Rule 41(b). The court's order initially implies that a laches analysis was contemplated by the court. However, our review of the remainder of the order reveals that the trial court did not rely on a

laches analysis.[1]  It is the substance of the order, not its explicit references, that must guide our conclusions.  *See Powers*, 832 P.2d at 1104 (analyzing an order under Rule 41(b), although the order referred only to Rule 41(a), because the substance of the order indicated that the court had considered both subsections).

### A.    Law

¶ 20    State Farm is correct that the order primarily relied on *Malm* to define the applicable law.  Although *Malm* briefly mentioned the doctrine of laches, it chiefly concerned the analytical framework to be applied to a Rule 41(b) motion to dismiss for failure to prosecute.  *Malm,* ¶ 16 (comparing the constraints imposed on plaintiffs by the doctrine of laches to those imposed by the statute of limitations).  *Malm* held that, in this context, a plaintiff's claim may be subject to

---

[1] "The elements of laches are: (1) full knowledge of the facts; (2) unreasonable delay in the assertion of [the] available remedy; and (3) intervening reliance by and prejudice to another." *Hickerson v. Vessels*, 2014 CO 2, ¶ 12 (quoting *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 73 (Colo. 1996)).  These elements are similar to, but not the same as, the factors relevant to a dismissal under C.R.C.P. 41(b).  The trial court did not cite these laches factors, nor did it evaluate whether State Farm had "full knowledge of the facts" or whether Steul's conduct demonstrated her "reliance" on State Farm's extended failure to serve her.

dismissal if the defendant is not served within a reasonable time after the complaint is filed.  *Id.* at ¶ 11.

¶ 21     The *Malm* court also set forth a nonexclusive list of factors that may be considered when determining whether the delay at issue was "reasonable," including "the length of delay, the reasons for delay, the prejudice that will result to the defendant by allowing the matter to continue, and the nature and extent of the plaintiff's efforts in avoiding or rectifying the delay."  *Id.*  Regardless of which factors are considered or the weight each factor is given, when evaluating whether a plaintiff has failed to prosecute its case, the court's primary concern should be the plaintiff's justification for the extended delay.  *Id.* at ¶ 19.  Although some of these factors could be relevant to a laches analysis, we do not read *Malm* as a laches case.

¶ 22     *Malm* concerned a circumstance in which the plaintiff filed the complaint one month before the applicable statute of limitations expired, and failed to serve the defendant for seven-and-one-half years thereafter.  *Id.* at ¶¶ 3, 20.  Consequently, *Malm* also addressed the standard to be applied when a lengthy delay in serving a defendant exceeds the expiration of the statute of

limitations, a circumstance in which additional delay is presumptively prejudicial. *Id.* at ¶ 16. The *Malm* court concluded that such a delay may be considered reasonable only where it is caused by the defendant's own wrongful conduct or some formal impediment to service, "not simply the inability of the plaintiff to locate the named defendant, no matter how extensive his efforts may be." *Id.* at ¶¶ 16-17.

## B. Analysis

¶ 23    Because Rule 41(b) provides the proper framework for an analysis of Steul's motion, and *Malm* construes Rule 41(b), the trial court did not err in relying on *Malm.* It also appears that the court properly understood the question before it. It characterized the issue as "whether a delay in serving the opposing party is unreasonable," and it understood its duty was to "evaluate a number of factors when determining whether the delay was unreasonable."

¶ 24    Further, we perceive no error in the court's application of the law to these facts. It properly considered the fact that Steul was not served with process until two years and four months after the statute of limitations had expired, raising a presumption that she

10

was prejudiced by the delay. It further evaluated the reasons for delay, including whether procedural impediments to service or Steul's alleged misconduct caused extensive delay.[2] We also note, although the trial court did not explicitly mention it, that there was a nearly six-month period of inactivity in 2017 and a second long period of inactivity in 2018, both of which can be seen as a lack of diligence on the part of plaintiff. And although *Malm* does not explicitly require a defendant to demonstrate actual prejudice to prevail on a Rule 41(b) motion, the court properly considered any prejudice that may have resulted from Steul's decreased ability to identify witnesses. *Id.* at ¶ 20 (noting that a failure to demonstrate "specific prejudice" should not preclude dismissal of the claim).

¶ 25    We acknowledge that the trial court's order may have initially mischaracterized *Malm*. However, its analysis and conclusions convince us that the court did not misunderstand the law or

---

[2] Steul's testimony at the evidentiary hearing provided record support for the court's conclusion that she had not attempted to secrete herself. The court also correctly observed that State Farm could have served Steul via section 42-7-414(3), C.R.S. 2019, at any time after filing suit, assuming Steul's whereabouts for service of process could not be determined through reasonable effort.

otherwise abuse its discretion in determining that State Farm failed to prosecute its claim.

## IV. Effect of Court Orders

¶ 26 While State Farm concedes that Rule 41(b) is the controlling law, it nonetheless objects to the trial court's reliance on *Malm* because *Malm* did not interpret or apply Rule 4(m) to the question of unreasonable delay. This argument dovetails with State Farm's additional argument that its claim should not have been dismissed because it was acting in reliance on the trial court's orders extending the time for service under Rule 4(m).

¶ 27 To address these arguments, we must first examine the relationship between Rules 4(m) and 41(b) to determine whether an order extending the time for service under Rule 4(m) necessarily precludes the court from later granting a Rule 41(b) motion to dismiss for failure to prosecute.

### A. Law

¶ 28 Rule 4(m) was adopted in 2013. It states as follows:

> If a defendant is not served within 63 days
> (nine weeks) after the complaint is filed, the
> court — on motion or on its own after notice to
> the plaintiff — shall dismiss the action without
> prejudice against that defendant or order that

service shall be made within a specified time. But if plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

¶ 29    Prior to its adoption, a plaintiff faced no formal deadline for serving a defendant except that, under Rule 41(b), service was required to be completed "within a reasonable time after commencing an action by filing." *Malm*, ¶ 11.  If an unreasonably long period passed between filing and service, the defendant's remedy was dismissal under Rule 41(b)(1) or (2) for failure to prosecute.[3]

¶ 30    Thus, the practical effect of the supreme court's adoption of Rule 4(m) is to provide a specific number of days in which service must occur where no such deadline previously existed.  Under Rule 4(m), if service has not occurred by the deadline, the court has several options.  It may (1) give the plaintiff notice that the case may be dismissed and ask for a showing of good cause, and if the plaintiff shows good cause it is entitled to an extension of time; (2)

---

[3] Under Rule 41(b)(1), a complaint could also be dismissed due to a plaintiff's failure to comply with the Colorado Rules of Civil Procedure.  However, no such violation is at issue in this case, and we do not address this portion of the rule.

give the plaintiff additional time to serve the defendant; or (3) dismiss the complaint without prejudice once notice is given. *Curry*, ¶ 36 (citing *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995), which interprets the similar federal rule); *Taylor v. HCA-HealthONE LLC*, 2018 COA 29, ¶ 23 (noting that expiration of the sixty-three day deadline is a condition precedent to dismissal or a new deadline). By its plain terms, the rule gives trial courts broad discretion. *Curry*, ¶ 36. This discretion includes the ability to grant plaintiff an extension without a showing of good cause, or any explicit excuse for delay. *Id.* at ¶ 39.

## B. Analysis

¶ 31    The court's orders in this case do not state whether the court extended State Farm's Rule (4)(m) deadlines because it found "good cause" for delay, or because the court was exercising its discretion to allow more time for service. Indeed, no such explanation is required under the rule. Therefore, we cannot assume that these orders reflect a series of findings that State Farm had good cause for delay.

¶ 32    By contrast, when the court considered Steul's motion to dismiss for failure to prosecute under Rule 41(b), it was required to

evaluate State Farm's justifications for the extended delay and weigh them against any potential prejudice to Steul. *Malm*, ¶¶ 11, 19. Because the Rule 41(b) motion raised issues that were not previously explicitly decided by the court, we do not view the series of Rule 4(m) orders secured by State Farm as safe harbor from a Rule 41(b) dismissal in this case.

¶ 33 Further, *Malm* concluded that Rule 4(m) does "not displace Rule 41(b)(2)'s provision for dismissal for failure to prosecute." *Id.* at ¶ 19. This is so because every violation of Rule 4(m) does not necessarily constitute a failure to prosecute under Rule 41(b).

¶ 34 When the delay at issue is not substantial, failure to serve a defendant before the Rule 4(m) deadline may amount to nothing more than a technical violation of the rule, a problem easily remedied by an order extending the deadline. However, once a court has granted multiple extensions of time to serve a defendant, the resulting delay may raise concerns that a plaintiff has failed to prosecute the claim. *See Williams v. Illinois*, 737 F.3d 473, 476 (7th Cir. 2013) (noting that if a plaintiff's delay is so long that it signifies a failure to prosecute, a court has discretion to dismiss the case on those grounds rather than dismissing it under

15

Fed. R. Civ. P. 4(m) for lack of service); *O'Rourke Bros., Inc. v. Nesbitt Burns, Inc.,* 201 F.3d 948, 953 (7th Cir. 2000) ("In certain circumstances, a plaintiff's dereliction in not obtaining service may lead beyond Rule 4 and head off into territory covered by Rule 41(b).").

¶ 35    Here, the delay at issue extended well beyond the initial sixty-three-day deadline set by the trial court under Rule 4(m).  The court granted at least seven extensions of time (as well as approving alternative methods of service) and had previously reinstated the case after dismissal for failure to meet a Rule 4(m) deadline. Because the period of delay was so extended, we conclude that the trial court did not err by relying on *Malm* and Rule 41(b) to decide this issue rather than Rule 4(m).

## V.    Effect of Section 42-7-414(3)

¶ 36    State Farm's final contention is that the trial court erred by failing to consider the public policies served by the General Assembly's enactment of section 42-7-414(3), and that the trial court's decision to authorize service under this statute militates in favor of denying Steul's motion to dismiss.

## A. Law

¶ 37　Section 42-7-414 is part of the "Motor Vehicle Financial Responsibility Act," (the Act), § 42-7-101, C.R.S. 2019, a law enacted by the General Assembly to "protect our people from the . . . financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible," § 42-7-102, C.R.S. 2019.  To that end, the Act was designed to "simplify the process for an innocent victim to access the negligent driver's liability insurance policy or his or her own uninsured motorist coverage." § 42-4-102(2)(b)(II).  It therefore mandates that motor vehicle insurance policies are written to "require policyholders . . . to appoint their insurance carrier as an agent for the purpose of service of process in certain limited instances in accordance with section 42-7-414(3)." § 42-7-102(2)(c).

¶ 38　Section 42-7-414(3)(a) requires motor vehicle insurance policies to include a provision stating that "[i]f the insured's whereabouts for service of process cannot be determined through reasonable effort, the insured agrees to designate and irrevocably appoint the insurance carrier as the agent of the insured for service of process." However, under subsection (3)(f), if a plaintiff serves an

17

insurance carrier under subsection (3), the amount of the carrier's liability cannot exceed the policy limits. Even so, any payment made by the carrier "shall not bar the injured person from subsequently making personal service" on the tortfeasor. § 42-7-414(3)(f).

## B. Analysis

¶ 39 The thrust of State Farm's argument is that when a court authorizes service on a defendant's insurance carrier under section 42-7-414(3), and it later considers whether a plaintiff has failed to prosecute its claim, the standards articulated in *Malm* must be altered to reflect the standards set forth in subsection 3 to promote the public policies reflected in the Act. More specifically, according to State Farm, subsection (3)(a)'s "reasonable effort" standard should be relied upon to determine whether any delay between the filing of the complaint and service of process was justified under Rule 41(b). Similarly, any prejudice to the defendant should be evaluated in light of subsection (3)(f)'s limitation on a plaintiff's recovery. We are not persuaded by these arguments.

¶ 40 While the enactment of section 42-7-414(3) provided plaintiffs with a new method to effect service on a defendant, the plain

language of subsection (3) contains no indication that it was intended to alter plaintiffs' existing obligations under Rule 41(b) or Rule 4(m). *Curry*, ¶ 23 (noting that we apply statutes according to their plain language). By its own terms, subsection (3) addresses only the "reasonable effort" that a plaintiff must make in order to proceed under the statutory provision. This inquiry is entirely distinct from the inquiry necessary to decide a Rule 41(a) motion, i.e., whether a plaintiff has made sufficient efforts to avoid unreasonable delay in effecting service, and whether any delay is justified in light of potential prejudice to the defendant.

¶ 41 Certainly here, it is apparent that State Farm knew Allstate was Steul's insurance agent before it filed suit. It therefore could have served Steul via her insurer immediately after its initial attempts to serve her in person failed. It apparently did not do so because its counsel did not research the options for service in a timely manner. This failure does not help State Farm prove that the delays at issue were justified by extraordinary circumstances.

¶ 42 We therefore conclude that the trial court did not err by declining to consider the standards set forth in section 42-7-414(3) in connection with the motion.

19

## VI. Conclusion

¶ 43    We affirm the order.

JUDGE TERRY and JUDGE GRAHAM concur.